FLORENCE CICHY *v.* JAN KOSTYK

INGLIS, C. J., O'SULLIVAN, DALY, COMLEY and PHILLIPS, Js.

Argued June 11—decided July 17, 1956

*William J. Secor, Jr.,* with whom was *Kenyon W. Greene,* for the appellant (defendant).

*Abraham A. M. Schweitzer,* with whom was *John W. Joy,* for the appellee (plaintiff).

COMLEY, J. On November 16, 1954, the Court of Common Pleas in Hartford County, *Pickett, J.,* presiding, rendered judgment that the defendant was the father of the plaintiff's illegitimate child and that he should pay to the plaintiff one-half of her lying-in expenses. No provision was made in the judgment for contribution by the defendant toward the cost of supporting the child. It is conceded that this omission was due to the failure of the plaintiff to offer evidence of that cost.

Thereafter, on April 22, 1955, the plaintiff moved to open the judgment. On May 17, 1955, this motion was granted by the court, *FitzGerald, J.,* presiding. On May 31, 1955, the case was retried before *Dwyer, J.,* and judgment was again rendered for the plaintiff. This judgment requires the defendant to make a weekly payment for the maintenance of the child. He has appealed from the judgment, assigning as error the action of the court in opening the first judgment and in admitting certain testimony at the second trial.

The defendant confines his attack on the opening of the first judgment to the claim that it represented an unreasonable and arbitrary abuse of judicial discretion. He does not question the power of the court to open the judgment, under proper circumstances. This he might well have done. Apart from legislation pertaining to specific proceedings, such as divorce or foreclosure, there is no statute in this state defining the power of a court to open or modify or vacate its judgments. The common law applies, and it limits the exercise of the power to the term of court at which the original judgment was rendered. *Hall* v. *Paine,* 47 Conn. 429, 430; *Poneleit* v. *Dudas,* 141 Conn. 413, 416, 106 A.2d 479; 1 Freeman, Judgments (5th Ed.) § 196. It is provided in § 3107d of

the 1955 Cumulative Supplement that "[t]here shall be a term of the court of common pleas for the transaction of civil business to be held annually on the first Tuesday of September, in the county of Hartford, at Hartford." Section 7599 provides that "[t]here shall be such sessions of the court of common pleas, held annually in each of the several counties of the state and in the judicial district of Waterbury at such times and places and for such duration of time as shall be fixed and determined by the judges of the court of common pleas at their annual meeting in each year." Substantially similar provision is made for "terms" and "sessions" of the Superior Court. Cum. Sup. 1955, §§ 3112d, 3113d. We may take judicial notice of the fact that at their annual meeting in June, 1954, the judges of the Court of Common Pleas fixed and determined that there should be three sessions of that court in Hartford County during the ensuing court year: the fall session, to start on September 17, 1954, and continue to December 23, 1954; the winter session, to start on January 4, 1955, and continue to March 25, 1955; and the spring session, to start on April 5, 1955, and continue to June 30, 1955. *Hurlbutt* v. *Hatheway,* 139 Conn. 258, 259, 93 A.2d 161; *Whitford* v. *Lee,* 97 Conn. 554, 555, 117 A. 554. Thus there was a statutory annual "term" of the Court of Common Pleas in Hartford County commencing on the first Tuesday in September, 1954, and continuing until the first Tuesday in September, 1955; and this "term" was divided into three "sessions." If the court had the power to open its judgment of November 16, 1954, at any time before the expiration of the annual term in the following September, its action in doing so on May 17, 1955, was proper. On the other hand, if its power to open ceased at the

expiration of the fall "session" at which the judgment was rendered, its action was improper but the error could be waived by the defendant.

For certain purposes, "terms" and "sessions" have been construed as synonymous. Section 7706 of the General Statutes requires that all trials shall be ended and judgments therein rendered before the close of the "next term or session" after the expiration of the "term or session" at which they were commenced. This alternative phrase has been construed to mean that judgments must be rendered before the close of the "session" following that at which the case was tried. *Hurlbutt* v. *Hatheway,* supra; *Spelke* v. *Shaw,* 117 Conn. 639, 645, 169 A. 787; *Simpson* v. *Young Men's Christian Assn.,* 118 Conn. 414, 418, 172 A. 855; *Whitaker* v. *Cannon Mills Co.,* 132 Conn. 434, 438, 45 A.2d 120.

The question involved in the present case was before the court in *In re Application of Title & Guaranty Co.,* 109 Conn. 45, 145 A. 151. The statute then in force, § 5451 of the 1918 Revision, differed from the statutes now dealing with "terms" and "sessions" of the Superior Court. As applied to Fairfield County, where the case arose, the statute provided that "[t]erms and sessions of the superior court for the transaction of civil business only, unless otherwise provided herein, shall be held annually at the times and places hereinafter specified, to wit: . . . . Sessions of said court shall be held at Bridgeport on the first Tuesday in January, the first Tuesday in April and the second Tuesday in October." The majority of the court said (p. 54): "In this and other statutes terms and sessions of the Superior Court are treated as equivalents. The sessions of the court in Fairfield County have been regarded and treated as equivalent to terms of court,

and each of these three sessions as ended not later than the beginning of the next session. This practice has prevailed for over thirty years. See Chapter 223 of the Public Acts of 1897. The same rule must prevail as to the right of the court to render judgment as to each. The court cannot at one term or session try a cause and render a judgment after the close of the next term or session, since § 5524 [Rev. 1918] empowers the judge of the Superior Court who has begun the trial of a civil cause, to continue the trial and render judgment after the expiration of that term, 'but such trial shall be ended and judgment rendered before the close of the next term or session.' *Whitford* v. *Lee,* 97 Conn. 554, 117 Atl. 554. It would be a singular procedure which would prevent a court from rendering judgment in a case begun by him at the second session thereafter but give the same court power to open a judgment at the second session thereafter, at his discretion."

It is significant to note that the two dissenting judges, while refusing to follow the majority in construing statutory "terms" and "sessions" as equivalents, agreed with the majority that a court lacks the power to open a judgment after the expiration of the session at which it was rendered. In his dissenting opinion, *Maltbie, J.,* said (p. 56) : "A recognition of this distinction [between terms and sessions] does not, however, lead to a different result as regards the power of the Superior Court to open judgments. In 1880, in *Hall* v. *Paine,* 47 Conn. 429, we stated the principle of the law which restricts the control a court has over its own judgments to the 'term' of court in which they were rendered; 'term' then meant the sitting of a court which in the statutes since has been designated as a session; and no doubt that was the sense in which

the word was used in the earlier cases recognizing the rule. *Wilkie* v. *Hall,* 15 Conn. 32, 37; *Weed* v. *Weed,* 25 Conn. 337, 342. Reason, as well as authority, dictates that the power of a court over its own judgments should be restricted to the session over which one judge presides rather than extended to a term embracing most of a year and comprising various sessions held by different judges."

Shortly after the decision in that case, the statute defining terms and sessions of the Superior Court was repealed and chapter 232 of the 1929 Public Acts became effective. Rev. 1930, §§ 5329-5332. It provided, as do our present statutes governing the Superior Court and the Court of Common Pleas, for annual terms in each county and sessions to be fixed and determined for each year by the judges at their annual meetings. There has been some intimation that these changes in the statutes have nullified the rule of *In re Application of Title & Guaranty Co.,* 109 Conn. 45, 145 A. 151, that a judgment may not be opened after the end of the session at which it is rendered, but there has been no full discussion of the matter and the case has not been expressly overruled. See *Union & New Haven Trust Co.* v. *Taft Realty Co.,* 123 Conn. 9, 14, 192 A. 268; *France* v. *Munson,* 125 Conn. 22, 26, 3 A.2d 78; *State* v. *Faillace,* 134 Conn. 181, 183, 56 A.2d 167; *Ostroski* v. *Ostroski,* 135 Conn. 509, 511, 66 A.2d 599. These cases involve dicta by the court or the construction of a particular statute or situations where the question was not raised either in the trial court or this court.

We are convinced that the rule of *In re Application of Title & Guaranty Co.,* supra, is sound and that it has not been affected by subsequent legislative changes with reference to the terms and sessions of our courts. After all, the fundamental question is

not the meaning of those words as used in our statutes. It may well be that they can no longer be regarded as synonymous or equivalent. The real question is the meaning of the word "term" as used in the common-law rule that a judgment may not be opened after the term at which it was rendered. As so used, does the word mean the same thing as our statutory "term" or, rather, does it mean "session," as applied to the sittings of our courts? That it means "session" becomes apparent when the real purpose of the rule is examined. In *Foley* v. *George A. Douglas & Bro., Inc.*, 121 Conn. 377, 380, 185 A. 70, it is said that "the basis of the rule essentially is that in the interest of the public as well as that of the parties there must be fixed a time after the expiration of which the controversy is to be regarded as settled and the parties freed of obligation to act further in the matter by virtue of having been summoned into or having appeared in the case." 1 Freeman, Judgments (5th Ed.) p. 383; see also *In re Application of Title & Guaranty Co.*, supra, 56. This wholesome purpose would be largely defeated if our courts could disturb final judgments at any time during the statutory annual term which extends from September of each year until September of the following year. Long after the time for appeal had expired and the parties had acted in reliance upon a final judgment, it could be opened for any reason by a trial judge who was not present at the session when it was handed down. Such uncertainty and instability in legal relations which have apparently been finally adjudicated does not commend itself as orderly judicial procedure.

It is, therefore, held that, under the rule of the common law, the judgments rendered at a session of our courts, as fixed and determined by the judges,

may not be opened or modified at a later session. In so holding, we do not overlook the distinction which the General Assembly has undoubtedly drawn between the "terms" and the "sessions" of our courts. In fact, the construction of those statutes is not involved. We are merely interpreting an ancient and salutary rule of the common law as applied to our own special arrangements for the sittings of our courts. There is no magic in the word "term" as used in the common-law rule which compels us to identify it with the word "term" as used in our statutes. The common-law rule was intended to give permanence to judgments rendered at one sitting, whatever it may be called, of a court, so that when that sitting has ended, the judgments rendered therein shall not be disturbed at a subsequent sitting.

It does not follow, however, that in the present case the trial court committed reversible error in opening the judgment of November 16, 1954. Although a court exceeds its powers by opening or modifying a judgment after the end of the session at which it was rendered, its action is not void, and the defect may be cured by the waiver or consent of the parties. *Poneleit* v. *Dudas,* 141 Conn. 413, 416, 106 A.2d 479; *Morici* v. *Jarvie,* 137 Conn. 97, 104, 75 A.2d 47; *Crane* v. *Loomis,* 128 Conn. 697, 700, 25 A.2d 650; *Foley* v. *George A. Douglas & Bro., Inc.,* 121 Conn. 377, 379, 185 A. 70; *Ferguson* v. *Sabo,* 115 Conn. 619, 623, 162 A. 844. At no time in the course of these proceedings, in the trial court or in this court, has the defendant questioned the inherent power of the Court of Common Pleas to vacate the first judgment and, in fact, he expressly conceded in oral argument before this court that the power existed. It is true that he assigns the opening of the judgment as

error, but only on the ground that it represented an unreasonable exercise of a judicial discretion. That is the only question which he has pursued in his brief and his argument. He must be taken, therefore, to have waived his right to question the power of the trial court to act at all on the motion to open the first judgment.

It is true that where a court has the power to open a judgment, its action in doing so represents the exercise of legal discretion. *Ideal Financing Assn.* v. *LaBonte,* 120 Conn. 190, 195, 180 A. 300; *Tyler* v. *Aspinwall,* 73 Conn. 493, 497, 47 A. 755. That action will not be disturbed on appeal unless it appears that the court acted unreasonably and in clear abuse of its discretion. *McCulloch* v. *Pittsburgh Plate Glass Co.,* 107 Conn. 164, 167, 140 A. 114; *Wildman* v. *Wildman,* 72 Conn. 262, 270, 44 A. 224. If the motion to open had been seasonably made in this case, the granting of it would afford no ground for criticism.

The first judgment made no provision for support of the child fathered by the defendant. Such an order is contemplated by General Statutes, §§ 8180-8182, and is entered for the protection not only of the mother and child but also of the town where the child may become a public charge. We are not concerned with the validity of the judgment which omitted such an important, if not essential, element, but certainly the opening of the judgment to permit this omission to be supplied can hardly be described as arbitrary or unreasonable.

There is no merit to the defendant's claim that the court abused its discretion in allowing certain leading questions to be asked of the plaintiff upon her direct examination. *Wright* v. *Blakeslee,* 102 Conn. 162, 168, 128 A. 113.

There is no error.

In this opinion INGLIS, C. J., DALY and PHILLIPS, Js., concurred; O'SULLIVAN, J., concurred in the result.