## STATE OF CONNECTICUT *v.* DENNIS LUZIETTI
## (14828)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued May 11—decision released August 2, 1994

*Barry N. Silver,* for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Philip Scarpellino,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The dispositive issue in this certified appeal is whether the trial court had jurisdiction to grant the defendant's motion for judgment of acquittal six weeks after the defendant had begun serving his sentence. We conclude that the trial court had no such jurisdiction and that it, therefore, improperly granted the defendant's motion for judgment of acquittal. Accordingly, we affirm the judgment of the Appellate Court, which reversed the trial court's judgment of acquittal and remanded the case with direction to reinstate the judgment of conviction.

The relevant procedural facts are undisputed. On March 31, 1992, the defendant, Dennis Luzietti, was convicted, after a jury trial, of reckless driving in violation of General Statutes § 14-222,[1] and operating a

---

[1] General Statutes § 14-222 provides: "RECKLESS DRIVING. (a) No person shall operate any motor vehicle upon any public highway of the state, or any road of any specially chartered municipal association or of any district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or in any parking area for ten cars or more or upon any private road on which a speed limit has been established in accordance with the provisions of section 14-218a or upon any school property recklessly, having regard to the width, traffic and use of such highway, road, school property or parking area, the intersection of streets and the weather conditions. The operation of a motor vehicle upon any such highway, road or parking area for ten cars or more at such a rate of speed as to endanger the life of any person other than the operator of such motor vehicle, or the operation, downgrade, upon any highway, of any motor vehicle with a commercial registration with the clutch or gears disengaged, or the operation knowingly of a motor vehicle with defective mechanism, shall constitute a violation of the provisions of this section. The operation of a motor vehicle upon any such highway, road or parking area for ten cars or more at a rate of speed greater than eighty-five miles per hour shall constitute a violation of the provisions of this section.

motor vehicle while his license was under suspension in violation of General Statutes § 14-215 (c).[2] The trial court sentenced the defendant as follows: (1) on the charge of operating a motor vehicle while his license was under suspension, one year imprisonment, execution suspended after nine months, two years probation, 200 hours of community service and a $750 fine; and (2) on the charge of reckless driving, thirty days imprisonment, one year probation and a $300 fine. The second sentence was to run consecutive to the first, resulting in a total effective sentence of one year and thirty days imprisonment, execution suspended after ten months, two years probation, 200 hours of community service and $1050 in fines.

The execution of the defendant's sentence was stayed pending the trial court's disposition of the defendant's posttrial motions, including a motion for judgment of acquittal that the court denied on April 7, 1992. Thereafter, the defendant was committed to the custody of the department of correction by way of a judgment mittimus dated April 7, 1992, and he began serving his sentence.

On May 19, 1992, the defendant filed a motion to reargue the motion for judgment of acquittal that previously had been denied. The trial court granted rear-

"(b) Any person who violates any provision of this section shall be fined not less than one hundred dollars nor more than three hundred dollars or imprisoned not more than thirty days or be both fined and imprisoned for the first offense and for each subsequent offense shall be fined not more than six hundred dollars or imprisoned not more than one year or be both fined and imprisoned."

[2] General Statutes § 14-215 (c) provides: "Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a or section 53a-56b or 53a-60d or pursuant to section 14-227b, shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, thirty consecutive days of which may not be suspended or reduced in any manner."

gument and held a hearing on May 22, 1992. The defendant argued, on the basis of a case that he had recently discovered, that there had been insufficient evidence before the jury to support its verdict on the count of operating a motor vehicle while his license was under suspension.[3] The state opposed the motion, claiming that the trial court did not have jurisdiction to vacate the judgment of conviction because the defendant had already begun serving his sentence. The trial court granted the defendant's motion, concluding that it had jurisdiction and that the defendant had been convicted on insufficient evidence.

Pursuant to General Statutes § 54-96,[4] the state appealed to the Appellate Court, contesting both the trial court's jurisdiction to grant the motion and its decision on the merits. The Appellate Court reversed the trial court's judgment concluding: "The trial court's granting of the defendant's motion [for judgment] of acquittal after the start of his sentence violated the common law rule that a court is without jurisdiction to modify its judgment in the absence of appropriate enabling legislation." *State* v. *Luzietti,* 32 Conn. App. 1, 5, 628 A.2d 8 (1993). Because this conclusion disposed of the case, the court did not reach the state's claim that there was sufficient evidence to support the jury verdict. Id., 5–6.

We granted the defendant's petition for certification, pursuant to General Statutes § 51-197f, limited to the

[3] Relying on *State* v. *Haight,* 2 Conn. Cir. Ct. 79, 194 A.2d 718 (1963), the defendant argued that in order to violate General Statutes § 14-215 (c) one must have operated a motor vehicle on a "public highway." The defendant then claimed that the evidence presented at trial showed that he had driven in a privately owned parking lot and not on a public highway.

[4] General Statutes § 54-96 provides: "APPEALS BY STATE FROM SUPERIOR COURT IN CRIMINAL CASES. Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

following question: "Does the trial court have jurisdiction to reconsider the defendant's motion for judgment of acquittal after the defendant had begun serving his sentence?" *State* v. *Luzietti,* 227 Conn. 919, 632 A.2d 697 (1993). We now affirm the judgment of the Appellate Court.

We first consider the defendant's claim that the inherent power of a trial court over its judgments conferred jurisdiction on the trial court to grant his judgment of acquittal six weeks after he had begun serving his sentence. The defendant relies on *State* v. *Avcollie,* 178 Conn. 450, 455, 423 A.2d 118, cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1979), in which we held that a trial court has the inherent authority to set aside an unreasonable jury verdict as part of its supervisory power. Id. The state contends to the contrary that a trial court's inherent authority over its criminal judgments ends when the defendant begins serving the sentence. Notwithstanding the trial court's authority to set aside a jury verdict before rendering judgment in a criminal case, we conclude that once judgment has been rendered and the defendant has begun serving the sentence imposed, the trial court lacks jurisdiction to modify its judgment in the absence of a legislative or constitutional grant of continuing jurisdiction.

The Superior Court is a constitutional[5] court of general jurisdiction. *State* v. *Carey,* 222 Conn. 299, 305–306, 610 A.2d 1147 (1992). In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. *Cichy* v. *Kostyk,* 143 Conn. 688, 690, 125 A.2d 483 (1956). It is

---

[5] The constitution of Connecticut, article fifth, § 1, provides: "The judicial power of the state shall be vested in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The power and jurisdiction of these courts shall be defined by law."

well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. *State* v. *Walzer,* 208 Conn. 420, 426–28, 545 A.2d 559 (1988); *State* v. *Nardini,* 187 Conn. 109, 123, 445 A.2d 304 (1982); *State* v. *Pallotti,* 119 Conn. 70, 74, 174 A. 74 (1934); *State* v. *Vaughan,* 71 Conn. 457, 460–61, 42 A. 640 (1899).[6] This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence. *State* v. *Walzer,* supra, 427.

Applying these principles to the present case, we conclude that the trial court lacked jurisdiction to grant the defendant's motion for judgment of acquittal on May 22, 1992, six weeks after he had begun serving his sentence. The trial court heard and denied all of the defendant's posttrial motions on April 7, 1992. A judgment mittimus was issued immediately and custody of the defendant was transferred thereby to the department of correction. At that time, the court lost jurisdiction over the case and, in the absence of a statutory grant of jurisdiction, it had no power to set aside the conviction.

We next consider the defendant's claim that General Statutes § 53a-39[7] conferred continuing jurisdiction on

---

[6] At common law, the trial court's jurisdiction to modify or vacate a criminal judgment was also limited to the "term" in which it had been rendered. *State* v. *Pallotti,* supra, 119 Conn. 74. Since our trial courts no longer sit in "terms," that particular common law limitation no longer has vitality in this state.

[7] General Statutes § 53a-39 provides: "REDUCTION OF DEFINITE SENTENCE OF THREE YEARS OR LESS. DISCHARGE OF DEFENDANT. At any time during the period of a definite sentence of three years or less, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which he could have been originally sentenced."

the trial court to grant the motion for judgment of acquittal six weeks after he had begun serving his sentence. He argues that § 53a-39 manifests a legislative intent that trial courts retain continuing jurisdiction to set aside their judgments when the sentence imposed is for less than three years. Specifically, the defendant contends that because the statute allows the sentencing judge to reduce the sentence to time served and "discharge" the defendant, the trial court's action in this case served "to effectuate the intent of the legislature." In response, the state argues that although § 53a-39 grants continuing jurisdiction to modify or reduce the sentence resulting in the defendant's discharge, the plain language of the statute applies only to the sentence and does not authorize the trial court to change the underlying judgment of conviction. We agree with the state and accordingly decline to adopt the defendant's unduly broad reading of § 53a-39.

"The objective of statutory construction is to give effect to the intended purpose of the legislature. *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981). It is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary. *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 538, 582 A.2d 1184 (1990)." (Internal quotation marks omitted.) *Forsyth* v. *Rowe,* 226 Conn. 818, 828, 629 A.2d 379 (1993). Furthermore, "[n]o statute is to be construed as altering the common law, farther than its words import [and . . . a statute] is not to be construed as making any innovation upon the common law which it does not fairly express." (Internal quotation marks omitted.) *State* v. *Sanchez,* 204 Conn. 472, 479, 528 A.2d 373 (1987).

The plain language of § 53a-39 allows the sentencing court or judge to "reduce the sentence, order the defendant discharged, or order the defendant dis-

charged on probation or conditional discharge . . . ." The statute refers only to the reduction of the term of imprisonment of the defendant. It does not refer to the underlying judgment of conviction. The defendant's broad reading would alter the common law rule that a trial court may not vacate a criminal judgment after the sentence has been executed. Moreover, such a construction would go beyond the words of the statute in contravention of well established rules of statutory construction. Accordingly, we conclude that § 53a-39 did not confer continuing jurisdiction on the trial court to entertain the defendant's motion for judgment of acquittal.

The defendant finally claims that a rule of continuing jurisdiction is necessary in this case in order to avoid an injustice, namely, his conviction on insufficient evidence. Implicit in the defendant's argument is the premise that without this rule he would be left without a remedy. Even if it is assumed for the sake of argument that the case discovered by the defendant subsequent to trial would have rendered the jury verdict without a valid foundation, the defendant's claim lacks merit because he has alternative remedies.

For example, General Statutes § 52-270 (a)[8] authorizes the Superior Court to grant a new trial upon peti-

---

[8] General Statutes § 52-270 provides in relevant part: "CAUSES FOR WHICH NEW TRIALS MAY BE GRANTED. (a) The superior court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the superior court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action."

tion by the defendant showing "reasonable cause."[9] A meritorious claim that a verdict is against the evidence may constitute reasonable cause for the grant of a new trial. *Jenkins* v. *Bishop Apartments, Inc.,* 144 Conn. 389, 391, 132 A.2d 573 (1957); *Bissell* v. *Dickerson,* 64 Conn. 61, 66, 29 A. 226 (1894). A petition for a new trial must be "brought but within three years next after the rendition of the judgment or decree complained of." General Statutes § 52-582. The judgment of the court in this case was rendered on March 31, 1992. The defendant thus has until March 31, 1995, to file a petition for new trial on the basis that the jury verdict was unreasonable in light of the evidence presented at trial. Any claimed injustice could be avoided thereby. Accordingly, we conclude that the defendant's claim that continuing jurisdiction is necessary in this case in order to avoid an injustice is meritless.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., and BORDEN, J., concurred.

KATZ, J., with whom BERDON, J., joins, dissenting. I agree with the defendant's claim that the inherent power of a trial court over its judgments conferred jurisdiction on the trial court to grant his motion for judgment of acquittal six weeks after he had begun serving his sentence. Therefore, I would reverse the Appellate Court's judgment and remand the case to that court for its consideration of the state's claim that there was sufficient evidence to support the jury verdict.

---

[9] The defendant also had, and still has, a variety of other possible remedies, including but not limited to: (1) filing an appeal under Practice Book § 4009; (2) requesting permission to file a late appeal under Practice Book § 4183; and (3) filing a writ of habeas corpus. See *Summerville* v. *Warden,* 229 Conn. 397, 422, 641 A.2d 1356 (1994).

The decision by the majority cannot be reconciled with this court's pronouncement in *State* v. *Wilson,* 199 Conn. 417, 437, 513 A.2d 620 (1986), that a criminal judgment will be treated like a civil judgment for purposes of deciding whether the trial court has jurisdiction to modify the judgment. In *Wilson,* the court concluded that the trial court did not have jurisdiction to modify its decision more than four months after judgment had been rendered. At issue in *Wilson* were the trial court's three separate decisions regarding the introduction into evidence of the defendant's two inculpatory statements made to the police upon his arrest for homicide. Prior to trial, the defendant moved to suppress both statements. At the conclusion of the evidentiary hearing concerning one of those statements, the trial court ruled from the bench that the defendant had waived his right to counsel, pursuant to *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), before making any statements to the police. As part of that decision, the court specifically rejected the defendant's testimony that he had requested a military lawyer. *State* v. *Wilson,* supra, 429. Following the evidentiary hearing regarding the defendant's second statement, the trial court, again ruling from the bench, found that the defendant's failure to request counsel constituted a waiver of his right to remain silent. Sometime thereafter, the trial court filed an undated and unstamped written memorandum of decision encompassing both claims that implied a finding that the defendant had requested military counsel. That written finding clearly contradicted the earlier rulings from the bench that the defendant had not requested counsel.

More than three years after the judgment of conviction and sentencing, and while the defendant's appeal was pending, the state filed a motion for articulation with the trial court, seeking a definitive ruling on the issue of whether the defendant had indeed requested

counsel. The trial court responded by amending its original memorandum of decision. It concluded that the defendant's testimony was not credible and that he had not requested counsel during the police interrogation at issue.

Following a lengthy discussion of the circumstances in which an articulation is useful for meaningful appellate review, the *Wilson* court focused on the timing of the articulation at issue. Because "[t]he trial court was without jurisdiction to amend in matters of substance its original memorandum of decision more than four months after sentence had been imposed," this court ordered the last memorandum of decision stricken. Id., 438.

Before reaching the ultimate decision of whether the last memorandum of decision could stand, this court traced the history of the trial court's power to modify its own judgment. Id. At common law, the trial court possessed the inherent power to modify its own judgments during the term at which they were rendered. *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 710, 462 A.2d 1037 (1983). The distinction was drawn between matters of substance and clerical errors, the latter being subject to correction at any time. *Morici* v. *Jarvie,* 137 Conn. 97, 104, 75 A.2d 47 (1950). It was well established that "[i]n the absence of waiver or consent of the parties, a court is without jurisdiction to modify or correct a judgment in other than clerical respects after the expiration of the term of the court in which it was rendered." *Snow* v. *Calise,* 174 Conn. 567, 571, 392 A.2d 440 (1978). At common law the word "term" meant "sessions" of court as that period had been defined in earlier enactments of General Statutes § 51-181. Id., 571–72; *Cichy* v. *Kostyk,* 143 Conn. 688, 695–96, 125 A.2d 483 (1956). Section 51-181, no longer makes reference to "sessions" of

court, however, because the court sits continuously throughout the year for periods set by the chief court administrator.

In 1978, Practice Book § 326 was adopted. It provides that "within four months succeeding the date on which it was rendered or passed," any civil judgment or decree may be opened or set aside. See also General Statutes § 52-212a. In *State* v. *Wilson,* supra, 199 Conn. 437, we held that there was no reason to distinguish between civil and criminal judgments in this regard and concluded that "for purposes of the common law rule, a criminal judgment may not be modified in matters of substance beyond a period of four months after the judgment has become final." We did not resolve the issue based on whether the defendant had been committed to the custody of the commissioner of correction or whether he had begun serving his sentence. Indeed, there is no reference whatsoever to those considerations.

Both the majority and this dissent acknowledge that, in the absence of statutory or constitutional provisions, the limits of jurisdiction of the Superior Court are delineated by the common law. *Cichy* v. *Kostyk,* supra, 143 Conn. 690. We part company, however, in determining what those limits are. The majority clings to the general rule that the trial court may not alter the judgment once the sentence has been executed.[1] The

---

[1] A recent pronouncement of this rule can be found in *State* v. *Walzer,* 208 Conn. 420, 425-28, 545 A.2d 559 (1988), in which we held that the trial court was without jurisdiction to modify the defendant's sentence because "he passed into the jurisdiction of the commissioner of correction at the time of the original sentence because a judgment mittimus had been issued at that time transferring his custody to the commissioner of correction subject to completion of his federal sentence. . . . [W]here a mittimus has been issued following a sentence, the stay incident to the posting of an appeal bond does not leave the sentence unexecuted and thus does not confer upon the trial court residual jurisdiction to modify the sentence that has been imposed." Because the mittimus has come to be regarded only as a clerical

reasons for this rule, however, have not clearly been stated other than to say that the court loses jurisdiction at that magical moment. See *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962). Some courts follow the rule because an increase in sentence by the trial court could run counter to the constitutional protections afforded against double jeopardy, while others follow the rule because a decrease in sentence could invade the executive or legislative pardoning powers or powers of commutation. See generally annot., 168 A.L.R. 709 (1947). None of those concerns are at issue here; nor should they be dispositive.

The protections against double jeopardy survive by virtue of the double jeopardy clause of the fifth amendment to the United States constitution and article first, § 8, of the Connecticut constitution, regardless of what limitations we set on our inherent authority to open a judgment. See *State* v. *Palmer,* 206 Conn. 40, 51, 536 A.2d 936 (1988). Additionally, General Statutes § 18–26 et seq., authorizing the board of pardons to grant commutations of punishment or releases, conditioned or absolute, provide unfettered discretion in the board to grant what is purely an act of clemency with no right of judicial review to anyone denied. *McLaughlin* v. *Bronson,* 206 Conn. 267, 271, 537 A.2d 1004 (1988). The factors traditionally considered, including the length of time elapsed since the commission of the crime, the institutional record of the inmate, the extent of the petitioner's efforts at rehabilitation, and the results of his efforts; *Connecticut Board of Pardons* v. *Dumschat,* 452 U.S. 458, 463, 101 S. Ct. 2460, 69 L.

document by virtue of which a person is transported to and rightly held in prison; *Commissioner of Correction* v. *Gordon,* 228 Conn. 384, 392, 636 A.2d 799 (1994); I assume that the majority relies on the imposition of sentence, the judgment of the court, to strip the trial court of its jurisdiction.

Ed. 2d 158 (1981); generally arise long after the defendant has been sentenced. Therefore, the ability of the board of pardons to act would be undisturbed by any attempt by the trial court, provided it acted within a reasonable time period, to open a sentence it had imposed in order to correct an injustice.

The legislature has deemed four months as a reasonable time period within which to allow judgments to be opened in the civil arena. General Statutes § 52-212a. We have followed suit. Practice Book § 326. As this court acknowledged in *State* v. *Wilson,* supra, 199 Conn. 437, this time period imposes reasonable demands on the trial attorneys to discover and disclose problems they perceive with the judgment. We should not impose greater demands on the criminal bar and bench.

By wedding itself to the outdated rigid rule rejected by this court in *State* v. *Wilson,* supra, 199 Conn. 417, the majority ignores the modern day reality of the crush of business plaguing our courtrooms, the fallout of which is to create great stress and place unrealistic expectations on our judges to behave in god-like fashion. Examples of how this rule operates provide the best evidence of its shortcomings. For example, in *State* v. *Adams,* 14 Conn. App. 119, 133, 539 A.2d 1022 (1988), in deciding that the trial court had acted within its discretion when it decided to open the sentence it had imposed three hours earlier and resentence the defendant, the Appellate Court focused on the fact that the defendant had not yet left the courthouse lockup for the prison. Leaving the courthouse should not be the standard; rather, we should recognize the trial court's inherent power to correct errors of substance within a reasonable time in order to do justice. As of April, 1994, 17,659 cases were pending in our criminal courts. State of Connecticut, Judicial Branch; Superior Court Case Management Report; Court Operations

Division. I think it is reasonable to allow a trial judge more time than it takes to eat a jailhouse lunch to recognize a problem with a sentence it has just imposed.

This court in *State* v. *Wilson,* supra, 199 Conn. 438, held that "[t]he trial court was without jurisdiction to amend in matters of substance its original memorandum of decision more than four months after sentence had been imposed." I would affirm that decision and hold that four months is a reasonable period to apply to criminal cases as well as civil cases for purposes of limiting the jurisdiction of a trial court to modify its own judgment.

I respectfully dissent.