******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KENNETH LEE MCCOY
(AC 38789)

Beach, Sheldon and Flynn, Js.*

*Argued October 20, 2016—officially released March 7, 2017*

(Appeal from Superior Court, judicial district of New
Haven, Blue, J.)

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, *Maxine V. Wilensky*, senior assistant state's attorney, and *Mary Elizabeth Baran*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Kenneth Lee McCoy, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a). The defendant claims that (1) the state engaged in prosecutorial misconduct, thereby depriving him of his due process right to a fair trial, and (2) the court erred in dismissing his motion for a new trial for lack of jurisdiction. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the fall of 2011, the victim, Dallas Boomer, saw both the defendant and Tramont Murray, his close friends, on a daily basis. The three men often conducted drug deals together out of rental cars with out of state license plates. During November, 2011, the defendant became estranged from both the victim and Murray. According to Murray, the defendant and the victim were involved in a financial dispute after the victim crashed a car belonging to the defendant's girlfriend. In addition, both the victim and Murray wanted to distance themselves from the defendant because of the defendant's alleged alcoholism and increasingly erratic behavior.

On December 6, 2011, at approximately 1 o'clock in the morning, the victim was sitting in the driver's seat of a parked rental car on a residential street in New Haven. Murray was sleeping in the reclined passenger seat. The victim saw the defendant's car pull over to the side of the road and idle nearby, so he shook Murray awake. Murray instructed the victim to drive away. The defendant then approached the victim's parked vehicle with his hand in his sleeve and began shooting at the windshield. The victim attempted to drive away, but could not. Six bullets struck the rental car, and the victim suffered fatal injuries as a result.

Immediately after the shooting, Murray, the sole witness, was questioned by the police. When the police asked Murray to identify the shooter, he stated that he had not seen the shooter, that he could not tell whether the shooter was white or black, and that he did not know whether there was one shooter or multiple shooters. Three weeks later, on December 27, Murray made a second statement to the police in which he identified the defendant as the shooter. Murray testified consistently with this statement at the defendant's trial. Murray, who then had three criminal cases pending against him, was questioned extensively as to whether he had received a plea deal in exchange for his testimony. He denied having received a plea deal, but admitted that he had received immunity for his testimony and $1100 in cash for relocation as part of a witness protection program.

Three months after the jury found the defendant guilty, the court, *Blue, J.*, sentenced him to sixty years

incarceration. This appeal followed. Additional relevant facts will be set forth as necessary.

I

The defendant first claims that prosecutorial impropriety deprived him of his constitutional right to a fair trial. Specifically, the defendant claims that the prosecutor acted improperly when she (1) attempted to elicit inadmissible prior consistent statements made by Murray, (2) asked the jury during closing argument to speculate as to a conversation that was not in evidence, and (3) argued during closing argument that, in order for the jurors to determine that Murray had received a special plea agreement in exchange for his testimony, they must believe defense counsel's argument that the state's witnesses were lying. Although we conclude that some of the prosecutor's actions were improper, we disagree with the defendant's claim that any impropriety deprived him of a fair trial.

Our standard of review on a claim of prosecutorial impropriety is well established. "[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . ." (Internal quotation marks omitted.) *State* v. *Luster*, 279 Conn. 414, 428, 902 A.2d 636 (2006). "In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

We will first determine whether the particular conduct was, in fact, improper. We will then consider whether the totality of the established improprieties deprived the defendant of a fair trial.

A

1

The defendant first claims that the prosecutor engaged in impropriety when, on three occasions, she attempted to elicit prior consistent statements in violation of a court order. The following additional facts are

relevant to this claim.

On the first day of trial, outside the presence of the jury, the prosecutor asked the court whether Murray's second statement to the police, in which he identified the defendant as the shooter, would be admissible as a prior consistent statement. The court responded: "Well, again, without finally ruling on that, the answer is not necessarily because the rule generally is that when a witness is impeached for a prior inconsistent statement, prior consistent statements are not normally admissible. They can be admissible under the discretion of the court, particularly—and I emphasize *particularly*—where the prior consistent statement precedes the prior inconsistent statement. But, frankly, if following the prior consistent statement the witness has given a bunch of consistent statements, that ordinarily does not come in. You know, be aware of that. The case law is quite clear on that. . . . I may have, you know, some ultimate discretion, we have to see what develops, but certainly the answer to what you just said is not necessarily." The court further stated: "I haven't given my final ruling on this because I have to see what the witness says on direct, obviously, but I think you must be aware of the general way that I look at this so that you are not surprised, and I think that I have said so."

Two days later, on direct examination, the prosecutor addressed Murray as follows: "Now, with regard to giving that statement [to the police] on December 27, which is essentially what you spoke about today . . . ." Defense counsel objected, and the court sustained the objection, noting that "[t]he contents of the second interview should not be divulged further than they already have been without expressed permission of the court. As you know, there are evidentiary rules pertaining thereto."

Later, the prosecutor asked Murray: "And let me just ask you this: when you spoke to the police again, what did you tell them with regard to who was the shooter?" The court sua sponte excused the jury and addressed the prosecutor, stating: "I don't know how many times I have told you on the record, and, I believe, explicitly, that consistent statements—prior consistent statements are not admissible into evidence unless they precede prior inconsistent statements. . . . I have told you, with respect to the second interview, on multiple occasions, multiple occasions do not get into the contents."

After the prosecutor indicated that she did not think that the court had been explicit in ruling that Murray's prior consistent statements were inadmissible, the court stated that "[u]nder no circumstances without prior permission of the court must you—may you ask this witness about any prior consistent statement postdating the original inconsistent statement of December 6. You may not ask him about the substance of that

without prior permission of the court, that includes, but is not limited to, his—the substance of his statement to the police on December 27. I had thought that I was explicit, but perhaps I was not, and if so, please forgive me." The court continued, stating: "I have told you repeatedly not to go there. If you go there again, without prior permission of the court, you are asking—you are basically going to require me to do things that, believe me, I do not want to do. So, don't go there."

Subsequently, after asking Murray whether he had visited the victim's family the day after the victim's murder, the prosecutor asked: "With regard to what had occurred with [the victim's] murder, did you tell them what happened?" Defense counsel objected, and the court sustained the objection, instructing the prosecutor to "[a]sk your next question, keeping in mind rulings that the court has already made."

The defendant argues that these comments and questions were improper because the prosecutor "repeatedly sought to introduce hearsay statements that the trial court had ruled inadmissible." The state responds that the prosecutor's questions were not improper, and, even if they were, the alleged improprieties did not deprive the defendant of a fair trial. We agree with the state that the defendant was not deprived of a fair trial.

Although the court's response to the prosecutor's second attempt to elicit Murray's prior consistent statements suggests that the prosecutor may have been "improperly aggressive" in continuing to seek the admission of those statements, the court did not set forth a full evidentiary ruling and order until *after* the second attempt. See *State* v. *Ortiz*, 280 Conn. 686, 706–707, 911 A.2d 1055 (2006) (prosecutor "improperly aggressive" in asking question three times after court sustained objection to nearly identical question). In addition, the record indicates that the prosecutor may not have understood the court's determination regarding these statements,[1] although a misunderstanding would not necessarily preclude a finding of impropriety. See id., 704 ("[i]t is well settled that prosecutorial disobedience of a trial court order, even one that the prosecutor considers legally incorrect, constitutes improper conduct"). Even if we were to assume, however, that the prosecutor improperly disregarded the trial court's evidentiary rulings, for reasons set forth in part I B of this opinion, we conclude that her actions did not deprive the defendant of a fair trial.

2

The defendant next claims that the prosecutor behaved improperly when she asked the jury to speculate as to a conversation between Murray and his mother that had not been admitted into evidence. Specifically, in the course of her closing argument, the prosecutor stated: "They talked, and he told her things,

I can't say what they were, but I think you can think about it." Defense counsel objected, and the court instructed the jury that "[t]his is not in evidence. Do not speculate. That is improper argument." It is well established that "[a] prosecutor may invite the jury to draw reasonable inferences from the evidence, however, he or she may not invite sheer speculation unconnected to evidence." *State* v. *Singh*, 259 Conn. 693, 718, 793 A.2d 226 (2002). Here, the prosecutor's statement invited speculation about statements unconnected to the evidence. The state concedes that this statement was improper. We agree.

### 3

Finally, the defendant claims that the prosecutor engaged in impropriety when, in response to defense counsel's argument that Murray had received a plea deal in exchange for his testimony, she suggested to the jury that "if you are to believe what [defense counsel] is opining, it's [defense counsel's] opinion that all of those people are lying, not just mistaken or uncertain, but those people took the stand and lied." The defendant argues that this argument violated our Supreme Court's holding in *Singh* because it distorted the government's burden of proof. The state argues that the prosecutor's comment did not constitute a *Singh* violation because "the testimony relating to the absence of a deal between the state and Murray did not directly relate to the defendant's guilt or innocence." We agree with the state.

Under *Singh*, "closing arguments providing, in essence, that in order to find the defendant not guilty, the jury must find that witnesses had lied, are . . . improper" because they "preclude the possibility that the witness' testimony conflicts with that of the defendant for a reason other than deceit." *State* v. *Singh*, supra, 259 Conn. 710, 712. Here, the prosecutor argued that in order for the jurors to find that Murray had received a secret plea deal, they would need to find that several of the other witnesses had lied. This argument did not improperly present the jury with a choice between believing the state's witnesses and acquitting the defendant. Cf. *State* v. *Albino*, 312 Conn. 763, 788, 97 A.3d 478 (2014). As the state has pointed out, the jury could have believed the witnesses' testimony that Murray had not received a plea deal and still voted to acquit the defendant, because the prosecutor's argument did not improperly draw "a direct connection between the defendant's acquittal and the credibility of every other witness in the case." Id. Instead, the prosecutor's argument drew a connection between the existence of a witness' plea deal and the credibility[2] of several other witnesses. Therefore, the prosecutor's argument did not violate *Singh*, and was not improper.

### B

We turn now to the question of whether the impropri-

eties "so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 477, 832 A.2d 626, 651 (2003). "In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety]. . . the centrality of the [impropriety] to the critical issues in the case. . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 540. We conclude that the defendant was not deprived of a fair trial.

Some factors weigh in the defendant's favor. First, the prosecutor's improprieties were not invited by the defense. Second, the improprieties identified previously all involved attempts to bolster Murray's credibility, and, because Murray was the sole witness to the actual crime, his credibility was central to the case. Also, the strength of the state's case largely depended on the credibility of Murray's testimony,[3] and thus this factor weighs in favor of the defendant.

The remaining factors support a conclusion that the improprieties did not deprive the defendant of a fair trial. Although the improprieties occurred both during the examination of a witness and in closing argument; see *State* v. *Warholic*, 278 Conn. 398, 897 A.2d 569 (2006); they were infrequent in the context of the defendant's week long trial. The prosecutor's improprieties were not severe, and the court promptly responded with curative instructions.

With respect to the prosecutor's reference to the contents of a conversation that was not in evidence, the court immediately instructed the jury to disregard the prosecutor's comment, noting that "[t]his is not in evidence. Do not speculate. That is improper argument." "[W]e have previously recognized that a prompt cautionary instruction to the jury regarding improper prosecutorial remarks or questions can obviate any possible harm to the defendant." (Internal quotation marks omitted.) *State* v. *Ceballos*, 266 Conn. 364, 413, 832 A.2d 14 (2003). This "specific, direct and immediate instruction by the trial court"; id.; mitigated harm to the defendant, and the effect of the prosecutor's impropriety was ameliorated.

With respect to the prosecutor's attempts to elicit Murray's prior consistent statements, defense counsel, an attorney with twenty-eight years of experience in criminal defense, objected every time the prosecutor made such attempts. Because the court sustained the defendant's objection every time and reprimanded the prosecutor, the prosecutor never actually succeeded in

eliciting Murray's prior consistent statements. In addition, the court instructed the jurors prior to their deliberations that "[i]t is the answer, not the question or the assumption made in the question that is the evidence." As a result, the effect of the questions and comments that the prosecutor made in an attempt to elicit Murray's prior consistent statements was mitigated and was not severe.

Moreover, Murray's second statement to the police indirectly was introduced into evidence without objection,[4] so the jury was already familiar with its contents. Although the prosecutor arguably behaved improperly in attempting to reemphasize Murray's prior consistent statements, presumably to bolster his credibility, the effect of these foiled attempts was not severe, because the jury did not receive any new, inadmissible information. Accordingly, we conclude that the defendant was not deprived of a fair trial.

II

The defendant next claims that the court erred in denying his motion for a new trial on the basis of a lack of jurisdiction. We are not persuaded.

The following additional facts are relevant to this claim. On March 18, 2013, one week after the defendant was convicted of murder, he filed a motion for a new trial alleging that the prosecutor had "continually elicited hearsay statements that the [c]ourt had precluded by an earlier ruling and offered inadmissible hearsay statements during closing [argument]." On May 22, 2013, while the defendant's motion for a new trial was pending, Murray was sentenced for offenses that had been pending before and during the defendant's trial. Murray was charged with (1) violation of probation on an underlying charge of sexual assault in the second degree; (2) violation of probation on an underlying charge of carrying a pistol without a permit; and (3) interfering with an officer, and (4) reckless driving. The prosecutor who represented the state in the defendant's case testified at Murray's sentencing hearing. She testified that, based on her experience working with and getting to know Murray throughout the defendant's case, she believed that Murray deserved a lesser sentence. For his four pending offenses, Murray received a sentence of continued probation and concurrent sentences of one year imprisonment, execution suspended, and eighteen months conditional discharge.

Two weeks later, the defendant's sentencing hearing took place. At the hearing, defense counsel attempted to argue the defendant's motion for a new trial, but was stymied by the unavailability of the trial transcript. Both defense counsel and the court agreed to postpone arguments until the transcript became available. Defense counsel stated that, so long as the motion was heard at a later date, he did not have a problem going forward

with the defendant's sentencing. The court agreed, stating: "[T]he proper way to consider this argument, which I—let me just say I view as colorable . . . is to have the transcript, have [defense counsel] file a memorandum with transcript references, and have the state— give the state a fair opportunity to file a memorandum of [its] own with transcript references, and then perhaps schedule argument, you know, at a convenient time. Obviously, there are a lot of family members here that are here to see the sentencing, and you're not proposing postponing the sentencing. You're just proposing having the—having the motion for a new trial heard at a [later] date." The court then sentenced the defendant to sixty years incarceration.

Approximately three months later, on September 3, 2013, the defendant amended his motion for a new trial to include a claim that the prosecutor had, in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), failed to disclose consideration given to Murray in exchange for his testimony. On September 20, 2013, the court denied the defendant's motion for a new trial for lack of jurisdiction, citing *State* v. *Luzietti*, 230 Conn. 427, 646 A.2d 85 (1994) for the proposition that a trial court loses jurisdiction over a criminal case once the defendant has been sentenced.[5] As a result, the court did not reach the merits of the defendant's motion. The defendant filed a motion for reconsideration, arguing that the court retained jurisdiction under *State* v. *Myers*, 242 Conn. 125, 698 A.2d 823 (1997). The court granted the motion for reconsideration, but again denied the motion for a new trial for lack of jurisdiction, stating that *Myers* "does not address the jurisdictional issue." The defendant subsequently appealed from his conviction to this court.

The defendant argues that the trial court retained jurisdiction over his motion for a new trial under our Supreme Court's holding in *Myers*. The state responds that the trial court properly ruled that it lacked jurisdiction over the defendant's motion for a new trial. We agree with the state.

"A determination regarding a trial court's subject matter jurisdiction is a question of law [over which] our review is plenary . . . ." (Internal quotation marks omitted.) *State* v. *DeVivo*, 106 Conn. App. 641, 644, 942 A.2d 1066 (2008). It is well settled that "the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act." *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001). The defendant argues that, contrary to this long-standing precedent, our Supreme Court's decision in *Myers* resolves the jurisdictional issue in the defendant's favor. In *Myers*, our Supreme Court determined that "a claim of juror bias may be brought

either by way of a motion for a new trial pursuant to § 902 [now §42-53] of the Practice Book or a petition for a new trial pursuant to [General Statutes] § 52-270." *State* v. *Myers*, supra, 242 Conn. 134. In rendering its decision, the court noted in passing that "[t]he trial court indicated . . . that its ruling on the defendant's motion after imposing sentence was improper, and that the issue of a juror's impartiality must be addressed by way of a petition for a new trial. Notwithstanding this procedural quagmire, the trial court retained jurisdiction to entertain the motion for a new trial after sentencing because it could have opened the judgment." (Footnotes omitted; internal quotation marks omitted.) Id., 136. As support for this statement, the court cited to *State* v. *Wilson*, 199 Conn. 417, 437, 513 A.2d 620 (1986), in which it previously had held that a criminal judgment "may be modified in matters of substance" within four months of a defendant's sentence having been imposed.

*Wilson* has not been explicitly overruled. Eight years after its holding in *Wilson*, however, our Supreme Court again held that "under the common law a trial court has the discretionary power to modify or vacate a criminal judgment *before the sentence has been executed*." (Emphasis added.) *State* v. *Luzietti*, supra, 230 Conn. 431–32. The dissenting justices in *Luzietti* noted that the majority's decision "cannot be reconciled with this court's pronouncement in . . . *Wilson*" because it "clings to the general rule that the trial court may not alter the judgment once the sentence has been executed." Id., 436, 438. The dissent made several arguments in favor of applying the so-called four month rule as stated in *Wilson*, but the majority apparently was not swayed by these arguments. See id., 435–41 (*Katz, J.*, dissenting).

Because *Myers* was decided three years after the court applied the traditional rule in *Luzietti*, one might argue that *Myers* suggests a return to the four month rule. The court in *Myers* did not, however, actually *apply* the four month rule because *Myers* did not directly address a jurisdictional issue. Instead, *Myers* focused on whether it was generally permissible to bring a claim of juror bias in a motion for a new trial, or if a claim of juror bias must always be brought in a petition for a new trial. The court determined that "[a]llegations of juror misconduct must be addressed at whatever stage they are encountered," and therefore could be brought in a motion for a new trial. Id., 139. Although the underlying facts in *Myers* were similar to those in this case in that the trial court ruled on the defendant's motion for a new trial after sentencing, the jurisdictional issue was not raised or fully addressed on appeal.

As such, *Myers* is not binding on that issue, and the rule that our Supreme Court has adhered to in the years

following both *Myers* and *Luzietti* applies. Under this rule, the trial court loses jurisdiction upon sentencing; see, e.g., *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 37; *State* v. *Reid*, 277 Conn. 764, 775, 894 A.2d 963 (2006); *State* v. *Das*, 291 Conn. 356, 362, 968 A.2d 367 (2009); and motions for a new trial are no exception to this rule. See *State* v. *Bruno*, 132 Conn. App. 172, 178–79, 30 A.3d 34 (2011) ("Practice Book § 42-54 authorizes the trial court in a criminal case to entertain a motion for a new trial filed pursuant to Practice Book § 42-53 only prior to the termination of its jurisdiction upon sentencing . . . . [Our] Supreme Court, in explaining the distinction between the petition for a new trial pursuant to . . . § 52-270 and the motion for a new trial brought pursuant to the rules of practice, has emphasized that a motion for a new trial is filed in a case then in progress or pending and is merely a gradation in that case leading to a final judgment." [Internal quotation marks omitted.]), cert. denied, 303 Conn. 919, 34 A.3d 393 (2012).

Applying the traditional rule to this case, we conclude that the court's jurisdiction over the defendant's criminal case terminated when the defendant was sentenced. The trial court lost jurisdiction when the defendant was sentenced on June 6, 2013.[6] Therefore, the court properly denied the defendant's motion for a new trial.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The following conversation took place between the court and the prosecutor after the prosecutor's second attempt to elicit Murray's prior consistent statements:

"The Court: Have I been explicit in any way? Because if I have, I need to know that.

"[The Prosecutor]: Yes, you have.

\* \* \*

"[The Prosecutor]: With all due respect to the court—

"The Court: Uh-huh.

"[The Prosecutor]: —my understanding of a prior consistent statement—

"The Court: Uh-huh.

"[The Prosecutor]: —does not include the testimony of the witness, if you will, on the stand talking about his own actions.

\* \* \*

"The Court: I am just going to say, unless you know of some authority that has repealed Practice Book—Practice Book [§] 6-11 (a), which is a general rule that is very explicit, do not go there.

"[The Prosecutor]: All right."

[2] We nevertheless question the logic of the argument, in general terms, that if the fact finder reaches a conclusion inconsistent with a witness' testimony, the fact finder implicitly concludes that the witness lied. The conclusion is most decidedly not logically compelled.

[3] As the state's appellate counsel stated at oral argument before this court, "without Tramont Murray there's really no case, certainly no conviction." The prosecutor expressed a similar sentiment at Murray's sentencing hearing, noting that "Mr. Murray was all of our evidence."

[4] After Murray testified as to what happened during the shooting, identified the defendant as the shooter, and admitted that he had not identified the defendant as the shooter in his first statement to the police, the prosecutor asked Murray the following:

"[The Prosecutor]: Did there come a time about three weeks later when you went back into the police department and gave another statement?

"[Murray]: Yes.

"[The Prosecutor] And in that statement, did you essentially tell the police what you have testified to today in court?

"[Murray]: Yes."

[5] In denying the defendant's motion, the court acknowledged that the parties and the court had inadvertently removed the motion from the trial court's jurisdiction. The court stated: "The jurisdictional argument, as you know, was not raised at the initial time of sentencing and maybe all three of us, you know, can take some responsibility . . . for that. Having said that, the jurisdictional argument is not a matter of my intent . . . once sentence is pronounced and the defendant begins serving that sentence . . . the trial court just plain has no jurisdiction."

[6] From the record, it is clear that the court did not intend to create this jurisdictional issue and, on the contrary, fully intended to hear the defendant's motion for a new trial after sentencing. The parties' collective mistake may leave the impression that the defendant's motion should have been heard in the spirit of fairness. We note, however, that at the time the court expressed its intent to hear the defendant's motion, that motion included only the defendant's claims for prosecutorial impropriety, which have been fully addressed in part I of this opinion. The defendant did not amend his motion to include the *Brady* claim until September, 2013, three months after the trial court lost jurisdiction over the defendant's case. Therefore, the trial court has never had jurisdiction over the defendant's *Brady* claim.

We also note that a newly discovered *Brady* claim may be brought within three years after sentencing by the independent vehicle of a petition for a new trial. See General Statutes § 52-270; Practice Book § 42-55.