******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* KENNETH LEE MCCOY
## (SC 19905)

Palmer, McDonald, Robinson, D'Auria, Mullins,
Kahn and Vertefeuille, Js.*

*Syllabus*

Convicted of murder in connection with the shooting death of the victim, the defendant appealed from the trial court's judgment, claiming that he had been deprived of a fair trial as a result of certain prosecutorial improprieties and that the trial court had improperly denied his motion for a new trial for lack of jurisdiction. An eyewitness to the shooting and the state's key witnesses, M, initially told the police that he could not identify the shooter. Subsequently, M gave a second statement to the police implicating the defendant in the shooting. Before trial, the prosecutor asked the trial court whether M's second statement would be admissible as a prior consistent statement. The court deferred its ruling, and, at trial, M testified about these statements without objection. Following that testimony, the prosecutor asked another question pertaining to M's second statement. The trial court sustained defense counsel's objection to that question. After the prosecutor asked another question regarding M's second statement during the same direct examination, the trial court excused the jury and directed the prosecutor not to inquire about the substance of the conversation the defendant had with the police when he gave his second statement without prior permission of the court. On one other occasion, the prosecutor asked M whether, after the shooting, he told the victim's family what had happened. Defense counsel objected, and the trial court sustained that objection. During closing arguments, the prosecutor referenced testimony indicating that M had spoken to his mother after the shooting and then asked the jury to speculate about what was said. The trial court sustained defense counsel's objection to that remark and instructed the jury not to speculate. After the jury found the defendant guilty but before he was sentenced, the defendant filed a motion for a new trial in which he alleged prosecutorial impropriety. At the defendant's sentencing, the parties and the trial court agreed to hear that motion at a later date. Months after the defendant started serving his sentence, he attempted to have his motion for a new trial heard. The trial court denied the motion, without a hearing, on the ground that it had lost jurisdiction upon execution of the defendant's sentence. On appeal, the Appellate Court concluded that, regardless of any improprieties that may have occurred during trial, the defendant was not deprived of his constitutional right to due process. The Appellate Court also concluded that the trial court lost jurisdiction once the defendant's sentence was executed and, therefore, that the trial court did not improperly deny the defendant's motion for a new trial. The Appellate Court affirmed the judgment of conviction, and the defendant, on the granting of certification, appealed to this court. *Held*:

1. The Appellate Court correctly concluded that the claimed prosecutorial improprieties did not deprive the defendant of a fair trial; applying the factors set forth in *State* v. *Williams* (204 Conn. 523), this court could not conclude that the defendant's right to due process was violated because, although the alleged improprieties related to the critical issue of M's credibility and were not induced by either the argument or conduct of defense counsel, and although the state's case was not particularly strong, the improprieties were not severe, as evidence regarding M's second statement already had been admitted into evidence without objection and M never answered the prosecutor's allegedly improper questions, the improprieties were not frequent, as only four claimed improprieties had occurred over the course of a weeklong trial, and the trial court adopted curative measures in response to the alleged improprieties.

2. The Appellate Court correctly concluded that the trial court lost jurisdiction over the defendant's motion for a new trial upon execution of the defendant's sentence but improperly upheld the trial court's denial of

that motion because the motion should have been dismissed rather than denied: in light of the long and consistent history underlying the traditional rule that a criminal court loses jurisdiction upon the execution of a sentence in the absence of a constitutional or legislative grant of authority to act, this court could not conclude that the trial court in the present case retained jurisdiction to decide the defendant's motion for a new trial when it did not act on that motion before the defendant's sentence was executed; moreover, because the trial court lacked jurisdiction to decide the defendant's motion for a new trial and therefore should have dismissed rather than denied that motion, this court concluded that the form of the trial court's judgment was improper, reversed that part of the Appellate Court's judgment upholding the denial of the motion, and remanded the case with direction that the trial court ultimately dismiss the defendant's motion for a new trial.

3. The defendant could not prevail on his claim that the trial court committed reversible error by imposing sentence while his motion for a new trial was pending; even if this court assumed that the trial court violated the rule of practice (§ 42-53 [a]), which governs rulings on motions for a new trial, by imposing sentence before ruling on the defendant's pending motion, the defendant had failed to explain how or why such a violation could have resulted in harm.

4. The defendant was not entitled to have his sentence vacated pursuant to the plain error doctrine: although it was improper for the trial court not to decide the defendant's motion prior to sentencing, in light of certain anomalies in this court's case law concerning a criminal court's jurisdiction over a pending and timely motion for a new trial after sentencing, the trial court's error was not so clear as to necessitate reversal under the plain error doctrine; moreover, even if that error had been clear, this court could not conclude that the trial court's failure to rule on the defendant's motion resulted in manifest injustice, as the claims of prosecutorial impropriety raised in that motion were considered and rejected by both this court and the Appellate Court, and also could be raised through a petition for a writ of habeas corpus.

(*Three justices concurring in part and dissenting in part in one opinion*)

Argued March 28, 2018—officially released May 7, 2019

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *Blue, J.*; verdict and judgment of guilty; thereafter, the court denied the defendant's motion for a new trial, and the defendant appealed to this court; subsequently, the appeal was transferred to the Appellate Court, *Beach, Sheldon* and *Flynn, Js.*, which affirmed the judgment of the trial court, and the defendant, on the granting of certification, appealed to this court. *Reversed in part*; *judgment directed*.

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, *Maxine Wilensky*, senior assistant state's attorney, and *Mary Elizabeth Baran*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. In this appeal, the defendant, Kenneth Lee McCoy, challenges the judgment of the Appellate Court affirming the judgment of conviction rendered after a jury trial of one count of murder in violation of General Statutes § 53a-54a (a). On appeal, the defendant contends that the Appellate Court improperly concluded that (1) he was not deprived of a fair trial due to prosecutorial improprieties, and (2) the trial court properly denied his motion for a new trial for lack of jurisdiction. We disagree but conclude that the form of the trial court's judgment is improper in that the trial court should have dismissed rather than denied the motion for a new trial. Accordingly, we reverse in part the judgment of the Appellate Court and remand the case to that court with direction to render judgment consistent with this opinion.

The following underlying relevant facts and procedural history are set forth in the Appellate Court's decision. "During the fall of 2011, the victim, Dallas Boomer, saw both the defendant and Tramont Murray, his close friends, on a daily basis. The three men often conducted drug deals together out of rental cars . . . . During November, 2011, the defendant became estranged from both the victim and Murray. . . .

"On December 6, 2011, at approximately 1 o'clock in the morning, the victim was sitting in the driver's seat of a parked rental car on a residential street in New Haven. Murray was sleeping in the reclined passenger seat. The victim saw the defendant's car pull over to the side of the road and idle nearby, so he shook Murray awake. Murray instructed the victim to drive away. The defendant then approached the victim's parked vehicle with his hand in his sleeve and began shooting at the windshield. The victim attempted to drive away, but could not. Six bullets struck the rental car, and the victim suffered fatal injuries as a result.

"Immediately after the shooting, Murray, the sole witness, was questioned by the police. When the police asked Murray to identify the shooter, he stated that he had not seen the shooter . . . . Three weeks later, on December 27, Murray made a second statement to the police in which he identified the defendant as the shooter. Murray testified consistently with this statement at the defendant's trial." *State* v. *McCoy*, 171 Conn. App. 311, 312–13, 157 A.3d 97 (2017).

After the jury returned its verdict, but prior to the sentencing date, the defendant filed a motion for a new trial. Id., 323. At the sentencing hearing, the defendant sought to have the motion heard by the trial court; however, the parties and the trial court subsequently agreed to go forward with the sentencing and to hear the motion at a later date. Id., 323–24. As a result, the sentencing hearing went forward, and the court sen-

tenced the defendant to sixty years incarceration. Id., 324.

Months after the sentencing, the defendant attempted to have his motion for a new trial heard. Because the defendant's sentence already had been executed, however, the court denied the motion without a hearing on the ground that it had lost jurisdiction. Id. The defendant then appealed from the judgment of conviction,[1] asserting that the prosecutor had engaged in a series of improprieties that deprived him of his constitutional right to a fair trial and that the trial court improperly denied his motion for a new trial for lack of jurisdiction. Id., 312.

The Appellate Court concluded that, regardless of any improprieties that may have been committed by the state during the trial, the defendant was not deprived of his due process right to a fair trial. Id., 314–23. The Appellate Court also concluded that the trial court lost jurisdiction once the defendant's sentence was executed and, therefore, that the trial court did not improperly deny the defendant's motion for a new trial. Id., 323–27. This certified appeal followed.[2] Additional facts will be set forth as necessary.

I

The defendant first claims that the Appellate Court improperly determined that he was not deprived of a fair trial by prosecutorial improprieties committed during his trial. Specifically, the defendant claims that the Appellate Court improperly concluded that the prosecutor did not deprive him of a fair trial when she (1) violated a court order by attempting on three occasions to elicit inadmissible prior consistent statements made by Murray, and (2) asked the jury during closing argument to speculate about the contents of a conversation between Murray and his mother that was not in evidence. In response, the state asserts that the Appellate Court properly concluded that these claimed improprieties did not deprive the defendant of his right to a fair trial.[3] We agree with the state.

With respect to the defendant's claim that the prosecutor thrice violated the trial court's order related to the inadmissibility of Murray's prior consistent statements, the Appellate Court's decision sets forth the following relevant facts. "On the first day of trial, outside the presence of the jury, the prosecutor asked the court whether Murray's second statement to the police, in which he identified the defendant as the shooter, would be admissible as a prior consistent statement. The court responded: 'Well, again, without finally ruling on that, the answer is not necessarily because the rule generally is that when a witness is impeached for a prior inconsistent statement, prior consistent statements are not normally admissible. They can be admissible under the discretion of the court, particularly—and I emphasize

particularly—where the prior consistent statement precedes the prior inconsistent statement. . . . [W]e may have to see what develops, but certainly the answer to what you just said is not necessarily.' The court further stated: 'I haven't given my final rulings on this because I have to see what the witness says on direct, obviously, but I think you must be aware of the general way that I look at this so that you are not surprised, and I think that I have said so.' " (Emphasis omitted.) Id., 315–16.

During the state's direct examination of Murray, after establishing that Murray had failed to identify the defendant as the shooter in his initial encounter with the police, the prosecutor engaged in the following colloquy with Murray:

" '[The Prosecutor]: Did there come a time about three weeks later when you went back into the police department and gave another statement?

" '[Murray]: Yes.

" '[The Prosecutor]: And in that statement, did you essentially tell the police what you have testified to today in court?

" '[Murray]: Yes.' " Id., 322 n.4

Defense counsel did not object to this testimony.

After this testimony, the prosecutor committed the first of the alleged improprieties when she asked: " 'Now, with regard to giving that statement [to the police] on December 27, which is essentially what you spoke about today . . . .' Defense counsel objected, and the court sustained the objection, noting that '[t]he contents of the second interview should not be divulged further than they already have been without [express] permission of the court. As you know, there are evidentiary rules pertaining thereto.' " Id., 316.

Later, during that same direct examination, the second alleged impropriety occurred when "the prosecutor asked Murray: 'And let me just ask you this: when you spoke to the police again, what did you tell them with regard to who was the shooter?' The court sua sponte excused the jury and addressed the prosecutor, stating: 'I don't know how many times I have told you on the record, and, I believe, explicitly, that . . . prior consistent statements are not admissible into evidence unless they precede prior inconsistent statements. . . . I have told you, with respect to the second interview, on multiple occasions, multiple occasions do not get into the contents.'

"After the prosecutor indicated that she did not think that the court had been explicit in ruling that Murray's prior consistent statements were inadmissible, the court stated that '[u]nder no circumstances without prior permission of the court . . . may you ask this witness about any prior consistent statement postdating the original inconsistent statement of December 6. You

may not ask him about the substance of that without prior permission of the court, that includes, but is not limited to . . . the substance of his statement to the police on December 27. I had thought that I was explicit, but perhaps I was not, and if so, please forgive me.' The court continued, stating: 'I have told you repeatedly not to go there. If you go there again, without prior permission of the court, you are asking—you are basically going to require me to do things that, believe me, I do not want to do. So, don't go there.' " Id., 316–17.

Finally, the prosecutor engaged in the third alleged impropriety related to prior consistent statements. This impropriety occurred when, "after asking Murray whether he had visited the victim's family the day after the victim's murder, the prosecutor asked: 'With regard to what had occurred with [the victim's] murder, did you tell them what happened?' Defense counsel objected, and the court sustained the objection, instructing the prosecutor to '[a]sk your next question, keeping in mind rulings that the court has already made.' " Id., 317.

With respect to the claim that the prosecutor improperly referred to facts not in evidence, the factual underlayment is as follows. During the trial, the state presented evidence that Murray's mother encountered Murray crying at his girlfriend's home. The prosecutor asked Murray's mother to describe Murray's demeanor as she spoke to him, and she began to tell the jury what Murray had said to her during that encounter. Defense counsel objected. The court sustained the objection and did not permit Murray's mother to testify about what Murray had said. Then, in closing argument, when referring to Murray's encounter with his mother at his girlfriend's home, the prosecutor argued: " 'They talked, and he told her things, I can't say what they were, but I think you can think about it.' Defense counsel objected, and the court instructed the jury that '[t]his is not in evidence. Do not speculate. That is improper argument.' " Id., 319.

In analyzing these alleged improprieties, the Appellate Court assumed that the prosecutor had improperly disregarded the trial court's evidentiary rulings related to Murray's prior consistent statements. Id., 318. As to the prosecutor's closing argument inviting the jurors to speculate about statements not in evidence regarding Murray's conversation with his mother, the Appellate Court determined, consistent with a concession by the state, that this argument was improper. Id., 319. The Appellate Court concluded, however, that these improprieties did not deprive the defendant of a fair trial. Id., 320–21.

In the present appeal, the defendant asserts that the Appellate Court improperly concluded that the alleged improprieties did not deprive him of a fair trial.[4] We disagree and conclude that the Appellate Court properly

determined that the claimed improprieties did not deprive the defendant of a fair trial. Because the Appellate Court either assumed that these actions of the prosecutor were improper or accepted the state's concession to that effect, we need only address whether the Appellate Court properly concluded that these claimed improprieties constituted a violation of the defendant's right to due process.

We begin with the standard of review. "[T]he touchstone of due process analysis in cases of alleged prosecutorial [impropriety] is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . In determining whether the defendant was denied a fair trial [by virtue of prosecutorial impropriety] we must view the prosecutor's comments in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Campbell*, 328 Conn. 444, 543, 180 A.3d 882 (2018).

"[O]ur determination of whether any improper conduct by the state's attorney violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that [impropriety] was objected to at trial. . . . Those factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Campbell*, supra, 328 Conn. 542.

We consider each of these factors in turn. First, there is no dispute that the comments of the prosecutor were not invited by either the argument or conduct of defense counsel.

Second, we conclude that the claimed improprieties were not severe. With respect to the prosecutor's allegedly improper comments regarding Murray's prior consistent statements, the severity of the alleged improprieties is belied by the fact that Murray's prior consistent statement identifying the defendant as the shooter already had been admitted into evidence without objection. Indeed, the jury already had heard that Murray had given a second statement to the police that was consistent with his testimony at trial. The fact that evidence regarding Murray's prior consistent statement was already admitted into evidence without objection demonstrates both that it was not severe, in that it did not elicit an objection when it was first introduced by the state, and that the impact of the prosecutor's allegedly improper questions was lessened by the fact that the jury had already heard evidence pertaining to

that statement.

Moreover, it is important to note that Murray did not answer any of the prosecutor's questions. It is axiomatic that questions are not evidence, only the answers to the questions are evidence. In the present case, the fact that the witness did not answer these allegedly improper questions supports the Appellate Court's conclusion that the alleged improprieties were not severe. Accordingly, we conclude that the severity factor weighs in favor of the state.

With respect to the third factor, namely, the frequency of the impropriety, we conclude that this factor also weighs in favor of the state. The defendant points to three instances in which the prosecutor may have improperly referred to Murray's prior consistent statements, and one instance in which the prosecutor improperly commented on statements not in evidence. Therefore, over the course of a weeklong trial, the defendant claims four instances of prosecutorial impropriety. Thus, we cannot conclude that these improprieties were pervasive.

Fourth, we consider whether the claimed improprieties involved a critical issue in the case. We conclude that the statements made by the prosecutor in the present case did involve a critical issue—namely, the credibility of Murray, the state's key witness and the primary source of evidence used to obtain a conviction of the defendant. Accordingly, we conclude that this factor weighs in favor of the defendant.

With respect to the fifth factor, we conclude that the trial court adopted curative measures in response to the alleged improprieties. In response to the prosecutor's improper comments regarding Murray's prior consistent statements, the trial court sustained each of the defendant's objections and once even interjected, sua sponte, to prevent Murray from answering an inappropriate question. Moreover, the trial court provided an instruction prior to jury deliberations as follows: "[i]t is the answer, not the question or the assumption made in the question that is the evidence."

In connection with the prosecutor's improper reference to facts not in evidence during the closing argument, defense counsel immediately objected and the trial court gave a curative instruction. The court instructed as follows: "Do not speculate on this. This is not in evidence. Do not speculate. That is improper argument." "[W]e have previously recognized that a prompt cautionary instruction to the jury regarding improper prosecutorial remarks or questions can obviate any possible harm to the defendant. . . . Moreover, [i]n the absence of an indication to the contrary, the jury is presumed to have followed [the trial court's] curative instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Ceballos*, 266 Conn. 364,

413, 832 A.2d 14 (2003). Therefore, we conclude that the strength of the prompt curative measures weighs in favor of the state.

Finally, we consider the sixth factor, namely the strength of the state's case. We cannot conclude that the state's case was particularly strong. There was limited physical evidence, and no murder weapon was ever recovered. Nevertheless, "we have never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 596, 849 A.2d 626 (2004). Under the circumstances presented in this case, in which the objectionable evidence already was before the jury, the witness was never permitted to answer the improper questions, and prompt curative instructions were given, we simply cannot conclude that the defendant's right to due process was violated. Accordingly, because the majority of the *Williams* factors weigh in favor of the state, we conclude that the claimed improprieties in the present case did not deprive the defendant of a fair trial.

II

The defendant next argues that the Appellate Court improperly upheld the trial court's denial of his motion for a new trial on the ground that the trial court lost jurisdiction upon the execution of the defendant's sentence. In particular, the defendant asserts that a trial court continues to have jurisdiction over a criminal matter for four months after judgment pursuant to *State* v. *Myers*, 242 Conn. 125, 136, 698 A.2d 823 (1997), and, therefore, should have ruled on the merits of his timely filed motion for a new trial. The state counters that the Appellate Court properly upheld the trial court's denial of that motion because the trial court lost jurisdiction upon execution of the defendant's sentence. We agree with the state's jurisdictional conclusion. In light of that jurisdictional defect, however, we further conclude that, as a matter of form, the trial court should have dismissed rather than denied the defendant's motion for a new trial.

The following additional facts set forth in the Appellate Court's decision are relevant to the defendant's claim. "On March 18, 2013, one week after the defendant was convicted of murder, he filed a motion for a new trial alleging that the prosecutor had 'continually elicited hearsay statements that the court had precluded by an earlier ruling and offered inadmissible hearsay statements during closing [argument].' . . .

"[Subsequently, at] the defendant's sentencing hearing . . . defense counsel attempted to argue the defendant's motion for a new trial, but was stymied by the unavailability of the trial transcript. Both defense counsel and the court agreed to postpone arguments until

the transcript became available. Defense counsel stated that, so long as the motion was heard at a later date, he did not have a problem going forward with the defendant's sentencing. The court agreed, stating: '[T]he proper way to consider this argument, which . . . let me just say I view as colorable . . . [i]s to have [defense counsel] file a memorandum with transcript references . . . give the state a fair opportunity to file a memorandum of [its] own with transcript references, and then perhaps schedule argument, you know, at a convenient time. Obviously, there are a lot of family members here that are here to see the sentencing, and you're not proposing postponing the sentencing. You're just proposing having the—having the motion for [a] new trial heard at a [later] date.' The court then sentenced the defendant to sixty years incarceration.

"Approximately three months later on September 3, 2013, the defendant amended his motion for a new trial to include a claim that the prosecutor had, in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), failed to disclose consideration given to Murray in exchange for his testimony. On September 20, 2013, the court denied the defendant's motion for a new trial for lack of jurisdiction, citing *State* v. *Luzietti*, 230 Conn. 427, 646 A.2d 85 (1994), for the proposition that a trial court loses jurisdiction over a criminal case once the defendant has been sentenced. As a result, the court did not reach the merits of the defendant's motion." (Footnote omitted.) *State* v. *McCoy*, supra, 171 Conn. App. 323–24.

"The defendant [then] filed a motion for reconsideration, arguing that the court retained jurisdiction under *State* v. *Myers*, [supra, 242 Conn. 125]. The court granted the motion for reconsideration, but again denied the motion for a new trial for lack of jurisdiction, stating that *Myers* 'does not address the jurisdictional issue.' " *State* v. *McCoy*, supra, 171 Conn. App. 324–25. The Appellate Court affirmed the judgment of the trial court, concluding that the trial court had lost jurisdiction upon execution of the defendant's sentence and, thus, properly denied the motion for a new trial. Id., 327.

We begin with the standard of review. "Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 448–49, 165 A.3d 1137 (2017). "The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law."[5] (Internal quotation marks omitted.) *State* v. *Parker*, 295 Conn. 825, 834, 992 A.2d 1103 (2010). There is no legislative or constitutional provision governing when a trial court loses jurisdiction following the execution of a criminal sentence; therefore, the issue is governed by the common law.

The central issue in the present case is whether the trial court lost jurisdiction upon the execution of the defendant's sentence. To resolve this issue, some context on the jurisdiction of criminal courts relating to sentencing is helpful.

Early case law explains that a court's jurisdiction over a case ends when the term of that court ends.[6] *State* v. *Pallotti*, 119 Conn. 70, 74, 174 A. 74 (1934) ("[t]he established rule is that a sentence in a criminal case may be modified at any time during the term of court at which it was imposed, if no act has been done in execution of it"). More specifically, early cases recognized that, even when the term had not yet ended, the trial court lost jurisdiction when a person had begun to serve his or her sentence. See *State* v. *Vaughan*, 71 Conn. 457, 461, 42 A. 640 (1899) (noting that common-law power of King's Bench to admit bail belongs to Superior Court and ceases when sentence is executed); *State* v. *Henkel*, 23 Conn. Supp. 135, 138, 177 A.2d 684 (Conn. Cir. 1961) ("[w]hile the established rule is that sentence in a criminal case may be modified at any time during the term of court at which it was imposed, such modification cannot be made after an act has been done in execution of it" [internal quotation marks omitted]); *Commonwealth* v. *Weymouth*, 84 Mass. (2 Allen) 144, 145–46 (1861) (explaining and adopting practice exercised by courts in England that court could modify sentence during court term but could not modify sentence once term was over).

One rationale for this rule was that once sentence was executed, double jeopardy protected a defendant from having his sentence increased. *United States* v. *Benz*, 282 U.S. 304, 307–308, 51 S. Ct. 113, 75 L. Ed. 354 (1931). Another separate, but related, rationale underlying this rule is the importance of protecting the finality of judgments. See, e.g., *Carpentier* v. *Hart*, 5 Cal. 406, 407 (1855) (reason for rule that court loses jurisdiction when term of court ends "is obvious . . . [in that] there must be some finality in legal proceedings, and a period beyond which they cannot extend").

In 1934, this court expressly recognized this common-law rule. In *State* v. *Pallotti*, supra, 119 Conn. 74, this court explained that "[t]he established rule is that a sentence in a criminal case may be modified at any time during the term of court at which it was imposed, *if no act has been done in execution of it.*" (Emphasis added.)

Then, in 1962, this court decided *Kohlfuss* v. *Warden*, 149 Conn. 692, 695–96, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962), in which this court again noted its approval of the rule in *Pallotti*, explaining as follows: "Another generally accepted rule of the common law is that a sentence cannot be modified by the trial court, even at the same term, if the

sentence was valid and execution of it has commenced. . . . The reason for this rule has been variously assigned. According to one view, the rule rests on the principle of double jeopardy. According to another view, the rule is based on the proposition that the trial court has lost jurisdiction of the case." (Citation omitted.)

Although we recognized the two rationales for this common-law rule, after *Kohlfuss*, case law reveals a movement away from double jeopardy as a primary basis for the rule. See *Wilson* v. *State*, 123 Nev. 587, 591–92, 170 P.3d 975 (2007) (explaining Supreme Court's gradual retreat from prohibition against increasing sentence after defendant had begun to serve it and pointing to *North Carolina* v. *Pearce*, 395 U.S. 711, 721, 89 S. Ct. 2072, 23 L. Ed. 2d 656 [1969], which permitted court to impose a more severe sentence after reconviction without violating double jeopardy). Additionally, the concerns related to double jeopardy being one of the animating principles behind this rule have lessened over the years, as the law regarding the ability of courts to modify illegal sentences became clearer. See *Benton* v. *Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969) (concluding that concurrent sentences doctrine did not preclude court from exercising jurisdiction over appeal claiming double jeopardy violation).

Nevertheless, the underlying rationale that the rule is supported by the interest in protecting the finality of judgments remains solid. See, e.g., *People* v. *Karaman*, 4 Cal. 4th 335, 348, 842 P.2d 100, 14 Cal. Rptr. 2d 801 (1992) (recognizing common-law rule "that the trial court may change its judgment only during the term in which the judgment was rendered, but not thereafter . . . was established in order to provide litigants with some finality to legal proceedings" [citations omitted; footnote omitted]). Indeed, this court recognized the rule again in 1982, when we reiterated that "[o]rdinarily a sentence may not be modified if any act [has been] done in execution of it." *State* v. *Nardini*, 187 Conn. 109, 123, 445 A.2d 304 (1982).

Notwithstanding this well established rule, in 1986, this court decided *State* v. *Wilson*, 199 Conn. 417, 513 A.2d 620 (1986). In that case, this court addressed whether the trial court could amend its written decision over three years after the defendant was sentenced, in response to a motion for rectification. Id., 432–34. This court explained that "[n]either our General Statutes nor our [rules of practice] define the period during which a trial court may modify or correct its judgment in a criminal case. On the civil side, however, [our rules of practice provide] that any civil judgment or decree may be opened or set aside within four months succeeding the date on which it was rendered or passed. We see no reason to distinguish between civil and criminal judgments in this respect, and we therefore hold that,

for purposes of the [common-law] rule, a criminal judgment may not be modified in matters of substance beyond a period of four months after the judgment has become final." (Emphasis omitted; internal quotation marks omitted.) Id., 437; see also Practice Book § 17-4; Practice Book (1978–97) § 326.

Despite making this pronouncement, this court did not use the four month rule to find that the trial court had jurisdiction. Instead, this court concluded that the trial court in that case was *without jurisdiction* to modify the judgment. *State* v. *Wilson*, supra, 199 Conn. 438. This court explained that "the judgment in this case became final when the defendant was sentenced . . . . The trial court, when it filed its amended memorandum of decision [over three years later] was clearly without jurisdiction to alter its previous finding . . . ." Id., 437. Therefore, this court struck the amended memorandum of decision. Id., 438.

Thereafter, in 1994, this court decided *State* v. *Luzietti*, supra, 230 Conn. 431–32. In *Luzietti*, we addressed whether the trial court had jurisdiction to rule on the defendant's motion for judgment of acquittal, filed six weeks after he began serving his sentence. Id., 428. Despite our decision in *Wilson*, this court did not deem the trial court to have had continued jurisdiction for four months and, thus, the ability to rule on the defendant's motion postsentencing. Id.

Instead, this court once more reiterated its approval of the traditional rule, stating as follows: "It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the [C]ommissioner of [C]orrection and begins serving the sentence."[7] (Citations omitted; footnote omitted.) Id., 431–32. Consequently, because the defendant already had begun to serve his sentence, we held that the court lacked jurisdiction to address his motion.

Three years after *Luzietti*, in 1997, the court decided *State* v. *Myers*, supra, 242 Conn. 125, upon which the defendant in the present case principally relies. In *Myers*, prior to sentencing, the defendant filed a motion for a new trial, claiming juror bias. Id., 129. Without ruling on the motion for a new trial, the trial court sentenced the defendant. Id., 131. Approximately five months after sentencing the defendant, the trial court ruled on the motion for a new trial. The trial court first granted the defendant's motion for a new trial but subsequently vacated that decision, determining that the defendant's claim should have been brought by way of a petition for a new trial. Id., 131–32. This court reversed the judgment of the trial court, concluding that a motion for a new trial was an appropriate vehicle for a claim of juror bias. Id., 132.

The central point of *Myers* was that a claim of juror bias had to be addressed in whatever form it was raised. Id., 139. Thus, the defendant's motion for a new trial in that case was appropriate. Id. Although the nature of the claim does not appear necessary to its holding that a motion for a new trial is an appropriate vehicle to alert the court to juror bias, the court made the following statement upon which the defendant seizes: "the trial court retained jurisdiction to entertain the motion for a new trial after sentencing because it could have opened the judgment." (Footnote omitted.) Id., 136, citing *State* v. *Wilson*, supra, 199 Conn. 436.

In *Myers*, this court neither acknowledged *Luzietti* nor otherwise discussed any of our well established precedent, including *Vaughan*, *Nardini*, *Pallotti*, or *Kohlfuss*, holding that a trial court loses jurisdiction upon the execution of the sentence. Instead, in support of its conclusion, this court cited *State* v. *Wilson*, supra, 199 Conn. 436, a case that did not even find jurisdiction under the four month rule it had espoused.

Additionally, a close examination of *Myers* reveals serious concerns about both its rationale and the implications of its decision were we to follow it without question. Specifically, although this court relied on the four month rule to find that the court had jurisdiction in *Myers*, the trial court in that case did not rule on the motion for a new trial within four months of the judgment but waited until approximately five months after the judgment to rule on the motion. *State* v. *Myers*, supra, 242 Conn. 131. *Myers* did not address the fact that the ruling on the motion occurred beyond the four month grant of jurisdiction or, more importantly, under what authority the trial court could rule on a motion five months after the sentencing. The concurring and dissenting opinion in the present case, however, notes the discrepancy but attempts to salvage the reasoning of *Myers* by focusing on the fact that the motion was filed prior to sentencing. Of course, nothing in *Myers* states that it was the fact that the motion was filed prior to sentencing that permitted the trial court to exercise jurisdiction beyond the four month period. Furthermore, even if we were to assume that filing the motion prior to sentencing extended the jurisdiction of the court, it certainly would not be extended in perpetuity. Yet that is precisely what *Myers* and the concurring and dissenting opinion suggest. Indeed, although the court paid lip service to the four month rule in *Myers*, it actually permitted an extension of five months.

Noting this disparity, the concurring and dissenting opinion further attempts to salvage the rationale of *Myers* by explaining that this court "not only applied the four month rule, but determined that the trial court retains jurisdiction over a motion for a new trial as long as it was timely filed prior to sentencing, even if the court did not rule on the motion within the four month

time frame." By doing so, the concurring and dissenting opinion no longer relies on *Myers* for its application of the four month rule but seems to assert that, as long as a motion is timely filed prior to sentencing, the trial court retains jurisdiction to modify the sentence at any time to rule on the motion. We disagree.

First, the concurring and dissenting opinion's position is not even supported by *Wilson*. As explained previously in this opinion, in *Wilson*, this court suggested that the civil rule that allows trial courts to reopen or set aside civil judgments within four months of judgment applies to criminal cases. Nothing in *Wilson* or the rule of practice on which that decision relied addresses retaining the limited extension of jurisdiction past a four month period even if the motion was filed before sentencing. Second, if we were to agree with the concurring and dissenting opinion and adopt its reading of *Myers*, we would essentially give courts an even broader ability to modify criminal judgments than that allowed in civil judgments under the four month rule. We decline to take such a dramatic departure from our well established common law.

Furthermore, over the years following this court's decision in *Myers*, we consistently have reaffirmed the principle that a trial court loses jurisdiction upon the execution of the defendant's sentence, unless it is expressly authorized to act. See *State* v. *Ramos*, 306 Conn. 125, 134–35, 49 A.3d 197 (2012) ("in criminal cases . . . once a defendant's sentence has begun [the] court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act" [emphasis omitted; internal quotation marks omitted]);[8] *State* v. *Parker*, supra, 295 Conn. 835–36 ("a generally accepted rule of the common law is that a sentence cannot be modified by the trial court . . . if the sentence was valid and execution of it has commenced" [internal quotation marks omitted]); *State* v. *Das*, 291 Conn. 356, 361–62, 968 A.2d 367 (2009) (concluding that trial court lacked jurisdiction over defendant's motion to vacate judgment of conviction and to withdraw plea after sentence had been executed and that no constitutional violation exception existed); *State* v. *Lawrence*, 281 Conn. 147, 155, 913 A.2d 428 (2007) (acknowledging established rule that once defendant's sentence has begun, a court may not take action affecting a defendant's sentence unless it expressly has been authorized to act); *State* v. *Reid*, 277 Conn. 764, 774, 894 A.2d 963 (2006) ("In a criminal case the imposition of sentence is the judgment of the court. . . . When the sentence is put into effect and the prisoner is taken in execution, custody is transferred from the court to the custodian of the penal institution. At this point jurisdiction of the court over the prisoner terminates." [Internal quotation marks omitted.]); *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001) ("[t]his court has held that the jurisdic-

tion of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act"). As these cases demonstrate, post-*Myers*, this court has not wavered from the rule that a trial court's jurisdiction is lost upon the execution of the defendant's sentence. By contrast, we cannot find, and the defendant does not point to, any case in which this court has relied on *Myers* for the proposition that a trial court retains jurisdiction after the defendant's sentence has been executed.

Accordingly, given the long and consistent history of our courts applying the traditional rule that jurisdiction is lost upon the execution of a sentence, we cannot conclude that *Myers* reflects a retreat from that common-law rule. Instead, we acknowledge that *Myers* and *Wilson* are anomalies in this court's case law, and we take this opportunity to clarify and reiterate, as we have consistently done since *Myers*, that a trial court loses jurisdiction once the defendant's sentence is executed, unless there is a constitutional or legislative grant of authority. *State* v. *Luzietti*, supra, 230 Conn. 431–32. Thus, any reliance on *Myers* by the defendant to extend the jurisdiction of the trial court beyond the point at which his sentence was executed is misplaced.

In the present case, the defendant's motion for a new trial, although filed before his sentence was executed, was not ruled upon before the sentence was executed. Consequently, the trial court lost jurisdiction. A motion for a new trial—even a timely filed motion that is not ruled upon before sentence is executed—is not a special grant of authority that imbues the trial court with jurisdiction until it is ruled upon. We note that this is an unusual circumstance, and not one that makes us question or need to revisit the well established rule that the court loses jurisdiction upon sentencing. Although we acknowledge that the trial court incorrectly failed to rule on the motion for a new trial before sentencing the defendant, we are mindful of the old adage that bad facts make bad law. Therefore, we refuse to expand the jurisdiction of criminal courts in an effort to address the highly unusual circumstances of the present case.

Indeed, the circumstance this case presents is exceedingly rare and unlikely to recur because a mechanism already exists for trial courts to maintain jurisdiction in this type of situation. Specifically, the court simply could have stayed the execution of the sentence until the motion was heard and ruled upon. To be sure, "[t]he common law has long recognized a court's ability to stay the execution of a criminal sentence" in order to "fulfill its duty to implement the penalties dictated by the legislature for criminal offenses and to promote the ends of justice." *Copeland* v. *Warden*, 225 Conn. 46, 49–50, 621 A.2d 1311 (1993). When the court stays

the execution of the sentence, it retains jurisdiction. *State* v. *Walzer*, 208 Conn. 420, 425, 545 A.2d 559 (1988).[9]

In the present case, because the trial court did not stay the execution of the defendant's sentence prior to ruling on his motion for a new trial, however, the court lost jurisdiction. The fact that it was not the intent of the court or the parties to do so does not alter the fact that jurisdiction was lost. Jurisdiction does not turn on the intent of the parties or the court. See, e.g., *State* v. *Das*, supra, 291 Conn. 358 (denying postsentencing motion to vacate judgment of conviction and to withdraw plea of nolo contendere on ground that trial court lost jurisdiction upon sentencing, and concluding that there is no constitutional violation exception).

Accordingly, the trial court, albeit inadvertently, lost jurisdiction over the defendant's case. Although we observe that this was unintentional, we believe the trial court correctly ruled that "the jurisdictional argument is not a matter of my intent . . . . [T]he trial court just plain has no jurisdiction. It's not a matter of intent or good faith or bad faith, or anything else. The court just flat out [has] no jurisdiction."[10] The Appellate Court, therefore, properly concluded that the trial court correctly determined that it had lost jurisdiction over the defendant's case when the defendant began serving his sentence. As we explained previously in this opinion, the trial court denied the defendant's motion for a new trial. Given that it lacked jurisdiction, however, it should have dismissed that motion. Therefore, the trial court's judgment is improper in form, and the case must be remanded to the Appellate Court with direction to remand the case to the trial court with direction to dismiss the defendant's motion for a new trial.

III

The defendant next claims that, if the trial court had lost jurisdiction because it sentenced him, then the trial court erred when it sentenced him while his motion for a new trial was pending. Specifically, the defendant asserts that the trial court violated Practice Book § 42-53, which required the trial court to adjudicate his motion for a new trial. The defendant further claims that, by sentencing him before ruling on the motion, the trial court improperly rendered itself unable to adjudicate the motion because it lost jurisdiction.

Practice Book § 42-53 (a) provides: "Upon motion of the defendant, the judicial authority may grant a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his or her asserting the error, the judicial authority shall grant the motion: (1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or (2) For any other error which the defendant can establish was materially injurious to him or her." The defendant recognizes that

the language of § 42-53 does not expressly require the trial court to rule on all motions for a new trial. Rather, he asserts that the requirement is implicit because it expressly requires that the trial court "shall grant the motion" if certain conditions are met. Practice Book § 42-53 (a).

"It is well settled that [n]ot every deviation from the specific requirements of a Practice Book rule necessitates reversal. . . . Ordinarily, our courts apply a harmless error analysis in determining whether a violation of a rule of practice amounts to reversible error. . . . To the extent that a failure to comply with a rule of practice rises to the level of a constitutional violation, [t]he United States Supreme Court has recognized that most constitutional errors can be harmless." (Citations omitted; internal quotation marks omitted.) *State* v. *Ayala*, 324 Conn. 571, 590–91, 153 A.3d 588 (2017).

In the present case, the defendant does not allege that the trial court's alleged failure to comply with Practice Book § 42-53 constitutes a violation of his constitutional rights to due process. Furthermore, on appeal to this court, the defendant did not establish harm that resulted from the trial court's alleged error in failing to adjudicate his motion for a new trial prior to sentencing him. Instead, the defendant merely asserts that the appropriate remedy for the error is to vacate his sentence so that his motion for a new trial can be adjudicated. We disagree. Even if the trial court violated § 42-53, the defendant has failed to explain how or why that violation amounts to reversible error. See, e.g., *Adams* v. *Dept. of Correction*, Docket No. M2013-00370-COA-R3-CV, 2014 WL 4536557, *3 (Tenn. App. September 11, 2014) ("[u]nder circumstances where the pending motions would not have affected the outcome, the oversight, or failure to rule on pending motions, has been considered harmless error") Thus, because he has not demonstrated harm, we reject the defendant's claim.

IV

Following oral argument, this court requested supplemental briefing, limited to the following question: "If we conclude that the trial court lost subject matter jurisdiction upon sentencing the defendant, is the doctrine of plain error applicable to the trial court's failure to have decided the defendant's pending and timely filed motion for a new trial before it sentenced the defendant?" Thereafter, the defendant argued that the failure of the trial court to rule on his motion for a new trial prior to sentencing constituted plain error that requires vacating his sentence and remanding the case to the trial court to rule on his motion for a new trial. The state contends that the trial court did not commit plain error, because the mistake was neither so obvious nor so harmful as to constitute manifest injustice. We agree with the state.

We begin with the standard of review and applicable law. An appellant cannot prevail under the plain error doctrine "unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice. . . . It is clear that an appellate court addressing an appellant's plain error claim *must* engage in a review of the trial court's actions and, upon finding a patent error, determine whether the grievousness of that error qualifies for the invocation of the plain error doctrine and the automatic reversal that accompanies it." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 288–89, 963 A.2d 11 (2009).

In the present case, although the trial court delayed hearing the defendant's motion in order to complete the sentencing out of respect for the families of the victim in attendance at the sentencing, we cannot conclude that the trial court had authority to refuse to hear the defendant's motion that was timely filed pursuant to Practice Book § 42-53. See *Ahneman* v. *Ahneman*, 243 Conn. 471, 482, 706 A.2d 960 (1998) ("the trial court lacked authority to refuse to consider the defendant's motions"); *Amato* v. *Erskine*, 100 Conn. 497, 499, 123 A. 836 (1924) ("[i]t is a rule essential to the efficient administration of justice, that where a court is vested with jurisdiction over the [subject matter] upon which it assumes to act, and regularly obtains jurisdiction of the person, it becomes its right and duty to determine every question which may arise in the cause, without interference from any other tribunal" [internal quotation marks omitted]).

Nevertheless, as we explained in part II of this opinion, a thorough review of our case law demonstrates that the well established rule is that a trial court loses jurisdiction upon execution of the defendant's sentence. We acknowledge, however, that *State* v. *Wilson*, supra, 199 Conn. 436, and *State* v. *Myers*, supra, 242 Conn. 136, were anomalies in our case law and may have resulted in some confusion. Accordingly, although we conclude that it was improper for the trial court to neglect ruling on the defendant's motion for a new trial prior to the execution of his sentence, we do not agree that it was so clear an error as to satisfy the first prong of the plain error doctrine.

In any event, even if that error were deemed to be clear, the defendant's claim of plain error fails on the second prong—namely, whether the error is "so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Myers*, supra, 290 Conn. 289. The defendant contends that the trial court's failure to decide his motion for a new trial constitutes manifest injustice because the opportunity to have a trial court review that motion was a unique opportunity and that any

other avenue for review would be inadequate. The state argues that the defendant was not harmed by the trial court's failure to review his motion for a new trial because there were other avenues for the defendant to have his claims resolved and, more generally, that a trial court's failure to comply with a rule of procedure is not enough, by itself, to necessitate reversal for plain error. We agree with the state.

We certainly acknowledge the benefits of having the trial judge, as opposed to a reviewing court, decide the motion for a new trial in the first instance. See *State* v. *Smith*, 313 Conn. 325, 347, 96 A.3d 1238 (2014) ("[a]ppellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided" [internal quotation marks omitted]). Under the circumstances of the present case, however, we simply cannot conclude that the trial court's failure to rule on the defendant's claims was an error so harmful that it resulted in manifest injustice.

In his motion for a new trial, the defendant raised the claim that the prosecutor engaged in impropriety by attempting to elicit previously precluded hearsay and by referring to statements not in evidence during closing arguments. These are some of the same issues that the defendant raised as stand-alone claims of prosecutorial impropriety on direct appeal. Indeed, the Appellate Court and now this court have reviewed the merits of those claims of impropriety and both courts have concluded that the defendant was not deprived a fair trial.[11] See *State* v. *McCoy*, supra, 171 Conn. App. 314–23; see also part I of this opinion. In other words, the prosecutorial impropriety claims raised in the defendant's motion for a new trial themselves have no merit. We therefore cannot conclude that the trial court's failure to review those claims equates to an error so harmful that it was a manifest injustice necessitating reversal pursuant to plain error review.

The concurring and dissenting opinion concludes that "the manifest injustice in this case is not necessarily that the defendant would have prevailed on his claims, but rather that the parties *and this court* have lost the benefit of the trial court's considered views of his claims, especially in light of the fact that the trial judge deemed the defendant's motion for a new trial 'colorable.' "[12] Anytime a trial judge fails to rule on a motion, we are deprived of the trial court's views. That, however, does not by definition result in reversible error. We might agree that the trial court's failure to rule on the defendant's motion in this case could be an error, but that error in itself does not satisfy the separate and distinct prong of the plain error test. "As we have explained . . . the defendant also must demonstrate, under the second prong of the plain error test, that the

omission was so harmful or prejudicial that it resulted in manifest injustice. . . . This stringent standard will be met only upon a showing that, as a result of the obvious impropriety, the defendant has suffered harm so grievous that fundamental fairness requires a new trial." (Citation omitted.) *State* v. *Jamison*, 320 Conn. 589, 598–99, 134 A.3d 560 (2016).

As with any error that is not structural—and there is no claim here that the court's failure to rule on the motion for a new trial is structural—a defendant must demonstrate how the error harmed him. As with any trial court error in which we must engage in an analysis of harm, we are either deprived of the trial court's considered decision or we are reviewing an erroneous decision. We then must take that nonexistent or erroneous ruling and consider the effect that it had on the conviction. In the plain error context, the error must be so harmful as to amount to a manifest injustice requiring a new trial. *State* v. *Myers*, supra, 290 Conn. 289.

To assess the harm, we must look at the substance of the motion to see if it has any merit. Indeed, it would be truly bizarre if a court's failure to rule on a meritless or frivolous motion for a new trial could amount to an error so harmful that a manifest injustice has occurred. That circumstance is what we are presented with here— lack of a ruling on a meritless motion. As we have explained previously in this opinion, the defendant's motion sought a new trial based on the prosecutor's attempts to elicit a prior consistent statement from a witness. We already have found that that claim lacks merit. See part I of this opinion. Indeed, the concurring and dissenting opinion agrees with this conclusion. Thus, unlike the concurring and dissenting opinion, we cannot conclude that the failure to get the trial court's "considered views" of a motion that so obviously lacks merit was an error so harmful that a manifest injustice has occurred.

We are also guided by this court's decision in *State* v. *Myers*, supra, 290 Conn. 278. In that case, the defendant appealed from a judgment of conviction for possession of narcotics. Id., 280–81. On appeal, the defendant alleged that the trial court committed plain error when it did not comply with Practice Book § 42-2 by not affording the defendant a hearing regarding his repeat offender status. Id., 284–85. The Appellate Court agreed, observing that a failure to comply with "applicable rules of practice" was, per se, plain error. (Internal quotation marks omitted.) Id., 285.

On appeal to this court, we observed as follows: "Although we agree with the Appellate Court that the trial court's failure to comply with the procedures of Practice Book § 42-2 was clearly improper, we conclude that the Appellate Court abused its discretion in vacating the defendant's sentence because the [trial court's]

error . . . did not 'result in manifest injustice.' . . . Indeed, apart from the trial court's failure to comply strictly with the applicable rule of practice, which we do not condone, the defendant has failed to raise *any* doubt with respect to the validity of his prior conviction. A trial court's failure to comply with a rule of criminal procedure, without more, is insufficient to require reversal for plain error." (Citation omitted; emphasis in original; footnote omitted.) Id., 289–90.

Similarly, although we do not condone the trial court's failure to rule on the motion for a new trial before sentencing the defendant without a stay of execution, its failure to do so, without more, is insufficient to require reversal for plain error. Indeed, in the present case, as in *State* v. *Myers*, supra, 290 Conn. 278, the defendant has failed to raise any doubt with respect to the validity of his conviction, particularly when we have had the opportunity to review, and reject, the very claims of prosecutorial impropriety raised in his motion for a new trial.

Furthermore, we agree with the state that there are other avenues by which a defendant may address such claims of prosecutorial impropriety. For instance, a defendant could (1) pursue a direct appeal from his or her conviction, as the defendant did in the present appeal, or (2) file a petition for writ of habeas corpus.

The defendant further contends that his other claim within the motion for a new trial, namely, the claim that the state violated *Brady* v. *Maryland*, supra, 373 U.S. 83, should be addressed by the trial court because the trial court is in a unique position to understand the intricacies of the present case. We are not persuaded.

First and foremost, as the state points out, the defendant's *Brady* claim was only added to his motion for a new trial three months after his sentence was executed. As a result, the trial court already had lost jurisdiction over the motion. Consequently, the trial court never had jurisdiction over this claim.

Second, although it is true that this court has recognized the importance of the trial judge's "superior opportunity to assess the proceedings over which he or she has personally presided"; (internal quotation marks omitted) *State* v. *Smith*, supra, 313 Conn. 347; this does not mean that the trial court is the *only* court that can review a *Brady* claim. Indeed, this court has regularly entertained claims of *Brady* violations that were not distinctly raised at trial, as long as those claims satisfied *Golding*.[13] See, e.g., *State* v. *Jordan*, 314 Conn. 354, 369–76, 102 A.3d 1 (2014); *State* v. *Ouellette*, 295 Conn. 173, 185–87, 989 A.2d 1048 (2010). Moreover, as the Appellate Court noted in the present case, newly discovered *Brady* claims may also be brought by way of a petition for a new trial up to three years after sentencing. *State* v. *McCoy*, supra, 171 Conn. App. 328 n.6; see

also General Statutes § 52-270. Therefore, we cannot conclude that the trial court's failure to review the defendant's *Brady* claim constitutes manifest injustice. Accordingly, we conclude that the defendant is not entitled to have his sentence vacated pursuant to the plain error doctrine.

The judgment of the Appellate Court is reversed insofar as that court affirmed the trial court's denial of the defendant's motion for a new trial, and the case is remanded to the Appellate Court with direction to reverse that ruling and to remand the case to the trial court with direction to dismiss the defendant's motion; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion ROBINSON, C. J., and KAHN and VERTEFEUILLE, Js., concurred.

\* The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3), and we subsequently transferred the appeal to the Appellate Court. See General Statutes § 51-199 (c); Practice Book § 65-1.

[2] We granted certification to appeal, limited to the following questions: (1) "Did the Appellate Court properly affirm the trial court's judgment by concluding that, notwithstanding any improper conduct by the state, the defendant was not deprived of a fair trial?" (2) "Did the Appellate Court properly conclude that the trial court lost jurisdiction to hear the defendant's motion for a new trial?" And (3) "In the alternative, did the trial court improperly sentence the defendant while his motion for a new trial was pending?" *State* v. *McCoy*, 325 Conn. 911, 158 A.3d 321 (2017).

Following oral arguments, this court requested supplemental briefing from the parties, limited to the following question: "If we conclude that the trial court lost subject matter jurisdiction upon sentencing the defendant, is the doctrine of plain error applicable to the trial court's failure to have decided the defendant's pending and timely filed motion for a new trial before it sentenced the defendant?"

[3] The defendant also asserts that the Appellate Court improperly concluded that the prosecutor did not violate *State* v. *Singh*, 259 Conn. 693, 793 A.2d 226 (2002), when she made statements during closing arguments suggesting to the jury that, in order to find that the state's key witness had a plea deal with the state, the jury would have to conclude that other witnesses were lying. The state asserts that the defendant's claim alleging a violation of *State* v. *Singh*, supra, 693, is not reviewable because he did not include that issue in his petition for certification to appeal. We agree with the state.

The Appellate Court concluded that the prosecutor did not violate *Singh* and, thus, did not engage in any impropriety regarding this issue. Therefore, the Appellate Court did not consider that alleged impropriety when it concluded that the defendant was not deprived of a fair trial. In his petition for certification to appeal, the defendant did not ask this court to certify a question regarding the alleged violation of *State* v. *Singh*, supra, 259 Conn. 693. Instead, the defendant only sought, and we only granted, certification on the issue of whether the Appellate Court's conclusion that the improprieties, either found or assumed, did not deprive the defendant of a fair trial. See footnote 2 of this opinion. Accordingly, we conclude that the *Singh* claim is not properly before this court.

[4] The defendant also asserts that the Appellate Court improperly assumed, without deciding, that the prosecutor improperly attempted to elicit prior consistent statements in violation of the court's evidentiary ruling. The defendant asserts that the Appellate Court should have determined that these actions by the prosecutor were improper. We reject this claim. Indeed, the Appellate Court's decision to assume, without deciding, that these statements were improper afforded it the opportunity to conduct the due process analysis in the same manner it would have if it had decided that the statements were improper.

[5] The concurring and dissenting opinion misapprehends the common law

related to jurisdiction of a trial court in a criminal case. The concurring and dissenting opinion characterizes the rule "at issue [as] the product of common law; it is a common-law exception to the court's inherent authority to open, correct, and modify judgments. . . . Accordingly, because the rule at issue is a common-law rule, this court has the authority to clarify, develop, and adapt the rule, including limiting its scope and applicability through exceptions." (Citations omitted.) We disagree. This court has explained repeatedly that it must rely on a legislative or constitutional grant of jurisdiction to enable it to have jurisdiction over a criminal judgment after the execution of the sentence. In criminal cases, the well established principle is that "under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the [C]ommissioner of [C]orrection and begins serving the sentence. . . . *Without a legislative or constitutional grant of continuing jurisdiction, however, the trial court lacks jurisdiction to modify its judgment.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Evans*, 329 Conn. 770, 778, 189 A.3d 1184 (2018), cert. denied,    U.S.    , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019).

The concurring and dissenting opinion further asserts that the question presented in the present case "is a question of judicial policy . . . ." We disagree. This court has repeatedly explained that "the judiciary cannot confer jurisdiction on itself through its own rule-making power" and that courts are "limited by the common-law rule that a trial court may not modify a sentence if the sentence was valid and its execution has begun." *State* v. *Lawrence*, 281 Conn. 147, 155, 913 A.2d 428 (2007). Instead of being allowed to expand the jurisdiction of a criminal court as a matter of "policy," this court must have a legislative or constitutional grant of continuing jurisdiction. The defendant and the concurring and dissenting opinion do not assert that either of these exists in the present case. Accordingly, we will not contort our well established case law to reach the result that the concurring and dissenting opinion urges this court to adopt.

[6] We have explained previously that, " '[a]t common law, the trial court's jurisdiction to modify or vacate a criminal judgment was also limited to the "term" in which it had been rendered. . . . Since our trial courts no longer sit in "terms," that particular [common-law] limitation no longer has vitality in this state." (Citation omitted.) *State* v. *Parker*, supra, 295 Conn. 834 n.7.

[7] In *Luzietti*, the dissenting justice opined that this court's decision in *Wilson* reflected a movement away from the traditional common-law view that a trial court loses jurisdiction upon the execution of the defendant's sentence and that the majority decision represented a departure from the rule announced in *Wilson*. *State* v. *Luzietti*, supra, 230 Conn. 436–37 (*Katz, J.*, dissenting). A majority of this court rejected the dissenting justice's claim.

Given the dissenting opinion in *Luzietti*, the concurring and dissenting opinion's assertion that *Luzietti* was decided "without . . . even discussing *Wilson*" is somewhat misleading. A complete reading of *Luzietti* demonstrates that the dissent in that case took the same position as the concurring and dissenting opinion espouses in the present case—that *Wilson* stood for the proposition that the civil rule allowing a trial court to modify its judgment within four months applies to criminal cases. However, by concluding that "once judgment has been rendered and the defendant has begun serving the sentence imposed, the trial court lacks jurisdiction to modify its judgment in the absence of a legislative or constitutional grant of continuing jurisdiction," the majority in *Luzietti* rejected the dissent's position and its interpretation of *Wilson*. *State* v. *Luzietti*, supra, 230 Conn. 431. Because *Wilson* was explicitly argued by the dissent in *Luzietti*, and the majority's conclusion is completely contrary to *Wilson*, we conclude that the court in *Luzietti* considered the reading of *Wilson* asserted by the concurring and dissenting opinion in the present case and rejected it.

[8] The concurring and dissenting opinion repeatedly quotes from *State* v. *Ramos*, supra, 306 Conn. 133–35, for the proposition that there is a "strong presumption in favor of jurisdiction." Although the concurring and dissenting opinion once notes that "the strong presumption in favor of jurisdiction must be considered in light of the common-law rule at issue," its repeated citation to *Ramos* for the presumption in favor of jurisdiction and consistent analogy to the civil context for this rule misses the mark. Indeed, *Ramos* highlights this critical distinction when it explained that, "*although* this court has recognized the general principle that there is a strong presumption in favor of jurisdiction . . . *in criminal cases, this principle is considered in light of the common-law rule that, 'once a defendant's sentence has*

*begun* [*the*] *court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act.*' " (Emphasis added.) *State* v. *Ramos*, supra, 134–35. Accordingly, *Ramos* is entirely consistent with our position and contrary to the one espoused by the concurring and dissenting opinion.

[9] The concurring and dissenting opinion refers to this mechanism as a "work-around" and asserts that it "undercuts not only the finality of the judgment, but also the other policy justification the state offers for the draconian rule the majority adheres to, i.e., that trial judges will take too long to rule on such motions." We disagree. As this court repeatedly has recognized, a judge sitting in the criminal court often finds that it is necessary to stay the execution of a defendant's sentence to ensure that criminal sentences are imposed in the manner intended. See *Copeland* v. *Warden*, 225 Conn. 46, 49, 621 A.2d 1311 (1993). For instance, if a defendant has charges pending in multiple jurisdictions, staying the execution of the sentence in one jurisdiction until the defendant is able to resolve his matters in another jurisdiction enables the defendant to receive appropriate credit for the time served on the charges. Therefore, instead of being a "work-around," as the concurring and dissenting opinion asserts, this is a useful mechanism, which is expressly rooted in case law and routinely utilized by Superior Court judges, and could have been utilized by the trial court in the present case to avoid the result the concurring and dissenting opinion seeks to avoid. Given the fact that a trial court loses jurisdiction in a criminal case upon execution of the defendant's sentence, the well established procedure, which the law has recognized for years, is more properly viewed as a way to promote the ends of justice and efficiency.

[10] The concurring and dissenting opinion asserts that, "[e]ven if the majority is correct that *Luzietti* has thrown cold water on *Wilson* and *Myers*, the trial court could have opened the judgment to rule on the new trial motion under the related concept of mutual mistake." The concurring and dissenting opinion then proposes that this court should apply the civil mutual mistake doctrine, which allows a party to file a motion to open or set aside a judgment within four months from the date of judgment if it was obtained because of a mutual mistake. It is important to note that neither of the parties asked this court to adopt this rule, and it was not argued at the trial court or the Appellate Court. Accordingly, we decline to address it. See, e.g., *State* v. *Fauci*, 282 Conn. 23, 26 n.1, 917 A.2d 978 (2007).

[11] The concurring and dissenting opinion asserts that it "would reverse the judgment of the Appellate Court and remand the case to that court with direction to remand the case to the trial court with direction to rule on that motion—a simple solution that [it] cannot fathom our law does not permit." Presumably, in the concurring and dissenting opinion's view, the defendant's conviction would remain intact, and his perfectly legal sentence would remain intact, but this court would send the case back to the same trial judge solely for the purpose of making a ruling on the motion for a new trial. The concurring and dissenting opinion's position ignores the complicated procedural posture of this case.

First, it is not at all clear that the trial court can rule on the motion for a new trial without vacating the defendant's sentence. Second, if the concurring and dissenting opinion is suggesting that we reverse the Appellate Court's judgment and also vacate the defendant's sentence, then it is not entirely clear whether the same trial judge would hear the case on remand. See General Statutes § 51-183c.

Moreover, if the remand to the trial court is to serve any more than a perfunctory purpose, it would seem necessary to not only reverse the judgment of the Appellate Court, but to vacate the decision of the Appellate Court that considered, and rejected, the merits of the same prosecutorial impropriety claims alleged in the defendant's motion for new trial. Otherwise, the trial court would be in the unenviable position of either ignoring the Appellate Court's decision in its entirety or grappling with its determinations on issues that the Appellate Court has determined have no merit. However, it is unclear what authority this court has to vacate the decision of the Appellate Court in these circumstances.

Rather than tackle these procedural complexities, the concurring and dissenting opinion's proposal is to "reverse the judgment of the Appellate Court and remand the case to that court with direction to remand the case to the trial court to rule on the motion for a new trial." Not only does this suggested remand order ignore the defendant's sentence—which was not an illegal sentence—but it disregards the fact that the Appellate Court has considered the merits of the defendant's prosecutorial impropriety claims

and found those claims to be meritless.

[12] The concurring and dissenting opinion appears to read much into the trial court's statement that the motion for new trial was colorable. We do not believe that this statement tips the scales in any measurable way in favor of the defendant's satisfaction of his burden to show egregious harm. The trial court's unqualified and unexplained statement that the defendant's motion was "colorable" is not enough for us to find that the court's failure to rule on the motion is a harm egregious enough to warrant reversal under the plain error doctrine. This is especially so given that both the Appellate Court and this court have concluded that the claims raised in that motion lack merit.

[13] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see also *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying *Golding*'s third prong).

---